STATE of Utah, Plaintiff and Respondent,

v.

Michael C. THOMPSON and Bruce A. Conklin, Defendants and Petitioners.

No. 880181.

Supreme Court of Utah.

March 21, 1991.

David L. Wilkinson, Stanley H. Olsen, Salt Lake City, for State.

John F. Clark, John K. West, Roy B. Moore, Salt Lake City, for Michael C. Thompson.

Roy B. Moore, Salt Lake City, for Bruce A. Conklin.

ON CERTIORARI TO THE UTAH COURT OF APPEALS

HOWE, Associate Chief Justice:

We granted certiorari to review the decision of the Utah Court of Appeals in *State v. Thompson*, 751 P.2d 805 (Utah Ct.App. 1988), on the propriety of the admission of evidence against defendants which had been gathered pursuant to the Subpoena Powers Act.

Defendants Michael C. Thompson and Bruce A. Conklin were convicted after a jury trial of five counts of bribery in violation of Utah Code Ann. § 76-6-508(1)(b), one count of antitrust violation under Utah Code Ann. §§ 76-10-914 and 76-10-920,

and one count of racketeering in violation of Utah Code Ann. § 76–10–1603. Their sentences were stayed pending appeal.

## I. ARGUMENT

Defendants assail the trial court's denial of their motion to suppress all evidence gathered by the State under the Subpoena Powers Act, Utah Code Ann. §§ 77–22–1 through –3, contending that their right to be secure in their papers against unreasonable searches and seizures conferred by article I, section 14 of the Utah Constitution was violated. In 1983 and 1984, the attorney general issued subpoenas duces tecum under the Subpoena Powers Act to defendants' bankers, accountants, business associates, and several corporations. In a related case,[1] Utah Power and Light Co. (UP & L) challenged the validity of the subpoenas served upon it. Judge Bunnell of the Seventh Judicial District Court quashed some subpoenas, and the attorney general withdrew others, upon a finding that the subpoenas were "too broad" or "exceeded the parameters of the good cause affidavit." We affirmed the dismissal of the UP & L investigation in *In re Criminal Investigation*, 754 P.2d 633 (Utah 1988).

This case differs from the UP & L case in that the subpoenaed persons (defendants' banks) have not challenged the validity of the subpoenas duces tecum. Defendants contend that they have standing to make such a challenge because their right to be free of unreasonable searches has been violated. The State argues that even if we assume the subpoenas were overbroad or failed to comply with the procedural safeguards imposed by *In re Criminal Investigation*, only the subpoenaed persons' rights have been violated. Defendants themselves were not subpoenaed and, as a general rule, do not have standing to assert the violation of fourth amendment rights belonging to a third party.

*Alderman v. United States*, 394 U.S. 165, 174, 89 S.Ct. 961, 966–67, 22 L.Ed.2d 176, 187 (1968); *Simmon v. United States*, 390 U.S. 377, 389, 88 S.Ct. 967, 974, 19 L.Ed.2d 1247, 1256 (1968).

Defendants counter that under article I, section 14 of the Utah Constitution, they have an "expectation of privacy"[2] in tax and bank records in the custody of accountants and banks. Our analysis is confined to bank records. The issue of tax records was not briefed with any specificity, nor were any authorities cited for defendants' tax record contention.

## II. ANALYSIS

Article I, section 14 of the Utah Constitution provides in part: "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated...."

We have recently pointed out:

> Article I, section 14 of the Utah Constitution reads nearly verbatim with the *fourth amendment*, and thus this Court has never drawn any distinctions between the protections afforded by the respective constitutional provisions. Rather, the Court has always considered the protections afforded to be one and the same.

*State v. Watts*, 750 P.2d 1219, 1221 (Utah 1988); *see State v. Lopes*, 552 P.2d 120, 121 (Utah 1976); *State v. Criscola*, 21 Utah 2d 272, 274, 444 P.2d 517, 518–19 (1968). However, we recognized in *State v. Watts* that it might be appropriate in some future case to give article I, section 14 a different interpretation from that given to the fourth amendment.

We did that very thing recently in *State v. Larocco*, 794 P.2d 460, 471 (Utah 1990), where a majority of this court held that the opening of a car door during a warrantless search for the vehicle identification number

---

1. *In re Criminal Investigation*, 754 P.2d 633 (Utah 1988). The conviction of a co-defendant who was separately tried was affirmed in *State v. Fletcher*, 751 P.2d 822 (Utah Ct.App.1988).

2. "[T]he concept of expectation of privacy [is] a suitable threshold criterion for determining whether article I, section 14 is applicable." *State v. Larocco*, 794 P.2d 460, 469 (Utah 1990) (Durham, J., with one justice concurring and one justice concurring in the result).

constituted an unreasonable search under article I, section 14 of the Utah Constitution. Defendants similarly seek a different interpretation under the state constitution than is given to bank records under the fourth amendment.

The United States Supreme Court has held that a depositor has no legitimate expectation of privacy in his bank records and has no standing under the fourth amendment to challenge their seizure. That Court dealt with the issue before us today as follows:

> Respondent urges that he has a Fourth Amendment interest in the records kept by the banks because they are merely copies of personal records that were made available to the banks for a limited purpose and in which he has a reasonable expectation of privacy. He relies on this Court's statement in *Katz v. United States*, 389 U.S. 347, 353 [88 S.Ct. 507, 512, 19 L.Ed.2d 576] (1967), quoting *Warden v. Hayden*, 387 U.S. 294, 304 [87 S.Ct. 1642, 1648, 18 L.Ed.2d 782] (1967), that "we have ... departed from the narrow view" that " 'property interests control the right of the Government to search and seize,' " and that a "search and seizure" become[ ] unreasonable when the Government's activities violate "the privacy upon which [a person] justifiably relie[s]." But in *Katz* the Court also stressed that "[w]hat a person knowingly exposes to the public ... is not a subject of Fourth Amendment protection." 389 U.S. at 351 [88 S.Ct. at 507, 19 L.Ed.2d at 576]. We must examine the nature of the particular documents sought to be protected in order to determine whether there is a legitimate "expectation of privacy" concerning their contents. *Cf. Couch v. United States*, 409 U.S. 322, 335 [93 S.Ct. 611, 619, 34 L.Ed.2d 548] (1973).
>
> Even if we direct our attention to the original checks and deposit slips, rather than to the microfilm copies actually viewed and obtained by means of the subpoena, we perceive no legitimate "expectation of privacy" in their contents. The checks are not confidential communications but negotiable instruments to be used in commercial transactions. All of the documents obtained, including financial statements and deposit slips, contain only information voluntarily conveyed to the banks and exposed to their employees in the ordinary course of business.

*United States v. Miller*, 425 U.S. 435, 442, 96 S.Ct. 1619, 1623–24, 48 L.Ed.2d 71, 78–79 (1976).

The result reached in *Miller* has been roundly criticized. *See* LaFave, 1 *Search and Seizure* § 2.7(c), at 511 (2d ed. 1987); Alschuler, *Interpersonal Privacy and the Fourth Amendment*, 4 N.Ill.U.L.Rev. 1, 21–28 (1983); Guzik, *The Assumption of Risk Doctrine: Erosion of Fourth Amendment Protection Through Fictitious Consent to Search and Seizure*, 22 Santa Clara L.Rev. 1051, 1068–72 (1982); Comment, *Reasonable Expectations of Privacy in Bank Records: A Reappraisal of United States v. Miller and Bank Depositor Privacy Rights*, 72 J.Crim.L. & Crim. 243 (1981); *see also* Note, *Government Access to Bank Records*, 83 Yale L.J. 1439 (1974) (arguing for a privacy interest in bank records). As LaFave points out, the thrust of *Miller*

> is that the bank customer has no expectation of privacy and thus no Fourth Amendment protection no matter how egregious the police conduct which results in government acquisition of the information in the bank records. Thus, in *United States v. Payner*, 447 U.S. 727, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980), where IRS agents arranged to have the bank records obtained by *burglary*, the Court without hesitation concluded that under *Miller* "a depositor has no expectation of privacy and thus no 'protectable Fourth Amendment interest' in copies of checks and deposit slips retained by his bank."

LaFave, 1 *Search and Seizure* at 511 n. 47.

Several state courts have rejected the rationale of *Miller* and have held that under their state constitutions, a bank customer has a privacy right in bank records and has standing to challenge an invalid subpoena. *People v. Jackson*, 116 Ill. App.3d 430, 72 Ill.Dec. 153, 452 N.E.2d 85

(1983); *Charnes v. DiGiacomo*, 200 Colo. 94, 612 P.2d 1117 (1980) (noting that in certain cases the customer can lose his expectancy); *Commonwealth v. DeJohn*, 486 Pa. 32, 403 A.2d 1283 (1979); *see also Burrows v. Superior Court of San Bernardino County*, 13 Cal.3d 238, 529 P.2d 590, 118 Cal.Rptr. 166 (1974) (decided prior to *Miller* but rejecting the rationale used therein).

These courts have found the rationale in *Katz v. United States*, that "the Fourth Amendment protects people, not places," to be more persuasive than that of *Miller*. While the *Katz* court stated that "[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection," it also noted that "what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." 389 U.S. at 351–52, 88 S.Ct. at 511, 19 L.Ed.2d at 582; *State v. Harris*, 671 P.2d 175, 177–78 (Utah 1983). The *Miller* court abandoned this rationale, relying instead "for its analysis of an expectation of privacy upon the ownership and possession of the records and not the reasonable expectations of the individual." *People v. Jackson* [72 Ill.Dec. at 156], 452 N.E.2d at 88; *see also* LaFave, 1 *Search and Seizure* § 2.7(c), at 511.

The state courts have thus found that under an expectation of privacy test,

> it is reasonable for our citizens to expect that their bank records will be protected from disclosure because in the course of bank dealings, a depositor reveals many aspects of her personal affairs, opinion, habit and associations which provide a current biography of her activities. Such a biography should not be subject to an unreasonable seizure by the State government.... Since it is virtually impossible to participate in the economic life of contemporary society without maintaining an account with a bank, opening a bank account is not entirely volitional and should not be seen as conduct which constitutes a waiver of an expectation of privacy. *See Burrows v. Superior Court of San Bernardino County*, 13 Cal.3d 238, 529 P.2d 590, 118 Cal.Rptr. 166 (1974).

*People v. Jackson*, 72 Ill.Dec. at 157, 452 N.E.2d at 89.

■ We hold that under article I, section 14 of the Utah Constitution, defendants under the facts of this case had a right to be secure against unreasonable searches and seizures of their bank statements, "checks, savings, bonds, loan applications, loan guarantees, and all papers which [they] supplied to the bank to facilitate the conduct of [their] financial affairs upon the reasonable assumption that the information would remain confidential." *Commonwealth v. DeJohn*, 486 Pa. at 46, 403 A.2d at 1290; *see also Burrows*, 13 Cal.3d at 247, 529 P.2d at 596, 118 Cal. Rptr. at 172.

■ Having established this right of privacy in defendants' bank records, it must still be shown that the search and seizure by the State was "unreasonable." A bank can be compelled to turn over a customer's records when served with a lawful subpoena. *See DeJohn*, 486 Pa. at 48, 403 A.2d at 1291. It follows that the depositor or customer cannot maintain a constitutional challenge to evidence gathered pursuant to a subpoena duces tecum lawfully issued to his bank. This court outlined in *In re Criminal Investigation* the test of whether a subpoena issued under the Subpoena Powers Act is lawful. We held that subpoenas duces tecum issued in a criminal investigation involving security operations at UP & L were not lawful because the Subpoena Powers Act was unconstitutionally applied. Neither the briefs nor the written record informs us of the extent to which the subpoenas in *In re Criminal Investigation* produced the evidence which contributed to defendants' convictions. The court of appeals noted that the subpoenas in the UP & L investigation were used "to accumulate most of the evidence used at trial, including tax and bank records from defendants' accountants and banks." *State v. Thompson*, 751 P.2d at 808. At oral argument, this court clarified that the evidence sought to be suppressed

in this case came as a result of illegal subpoenas:

JUSTICE ZIMMERMAN: Do you contest the fact that the vast bulk of the documentary evidence against them [defendants] resulted from the subpoenas that were discussed in *In re Criminal Investigation?*

COUNSEL FOR THE STATE: No, your honor. We acknowledge that the information produced as against the defendants came in as a result of those subpoenas that were served.

. . . .

JUSTICE STEWART: Did any of these subpoenas in this case ... were they served on defendants' banks to acquire information pertaining to defendants' bank accounts?

COUNSEL FOR THE STATE: Yes, indeed, your honor. A number of them.

■ "[E]xclusion of illegally obtained evidence is a necessary consequence of police violations of article I, section 14." *State v. Larocco,* 794 P.2d at 472; *see also State v. Bolt,* 142 Ariz. 260, 689 P.2d 519, 524 (1984) (referring to the Arizona equivalent of article I, section 14). All bank records obtained as a result of illegal subpoenas must therefore be suppressed unless a good faith exception to the exclusionary rule is appropriate.

We have not heretofore had occasion to decide whether there is a good faith exception to the exclusionary rule under article I, section 14 of the Utah Constitution. The court of appeals held that the evidence obtained from defendants' bank was admissible under the good faith exception enunciated in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The court found that "the subpoenas duces tecum were executed in objectively reasonable reliance on prior, external authorization." *State v. Thompson,* 751 P.2d at 809–10.

In its brief to this court, the State contends that no fourth amendment right has been violated and a good faith exception does not have to be reached. Defendants contend that a good faith exception should not be applicable on a state constitutional level, analogizing the attorney general's unconstitutional application of the Subpoena Powers Act to a police officer's erroneous probable cause determination in a warrantless search.

■ We agree with both parties. The State is correct because no fourth amendment violation occurred. Defendants are correct because a good faith exception, even if applicable to state constitutional violations, would not apply to the facts of the instant case.

The federal good faith exception has been characterized as follows:

The good faith exception to the warrant requirement of the fourth amendment developed in *Leon* arose in the context of reasonable reliance by a police officer on a warrant determined by a magistrate, albeit incorrectly, to rest on probable cause. *Leon,* 468 U.S. at 904, 104 S.Ct. at 3410. In its recent decision in *Illinois v. Krull,* 480 U.S. 340, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987), the Court extended the good faith exception announced in *Leon* to situations in which police officers conduct a warrantless search pursuant to a regulatory scheme authorizing the search, even though that statute later is invalidated on constitutional grounds. *Id.* at 349, 107 S.Ct. at 1167. In both *Leon* and *Krull,* the touchstone of the Court's decision was the police officer's objectively reasonable reliance on the determination of a magistrate or a legislature that the challenged search in fact met the standards required by the fourth amendment.

*United States v. Warner,* 843 F.2d 401, 404–05 (9th Cir.1988); *cf. State v. Mendoza,* 748 P.2d 181, 185 (Utah 1987).

This objectively reasonable reliance on the determination of a magistrate or a legislature is not present here. We do not have an error by a magistrate in finding probable cause or in the issuance of a technically deficient warrant. The reliance on the neutral magistrate (district judge) was terminated before the constitutional violations occurred. The attorney general obtained authorization from the district court

to conduct an investigation after a showing of good cause. It was thereafter the responsibility of the attorney general to "subpoena witnesses, compel their attendance and testimony under oath before any certified court reporter, and require the production of books, papers, documents, recordings and any other items which constitute evidence or may be relevant to the investigation *in the judgment of the attorney general* or county attorney." Utah Code Ann. § 77-22-2(1) (1980) (emphasis added).[3] Any venture beyond the realm of relevance or the parameters of the good cause affidavit is attributable to the attorney general, not the magistrate.

Similarly, the attorney general cannot be said to have reasonably relied on the legislature's inadvertent abridgement of constitutional rights. The statute at issue in *Krull* authorized warrantless administrative searches and was declared unconstitutional. In extending the good faith exception, the court reasoned: "Penalizing the officer for the [legislature's] error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." *Illinois v. Krull*, 480 U.S. 340, 350, 107 S.Ct. 1160, 1167, 94 L.Ed.2d 364, 375 (1987).

The officer in *Krull* was "simply fulfill[ing] his responsibility to enforce the statute as written." *Id.* The legislative grant of discretionary power to construe and implement the Subpoena Powers Act places the attorney general in a qualitatively different position from a patrolman enforcing a vehicle code. As the state's highest law enforcement officer, the attorney general is expected to perform his discretionary functions within constitutional bounds. To shield his conduct behind the vagueness of a legislative grant of authority would be tantamount to a grant of immunity to act unconstitutionally. We conclude that a good faith exception, even if it were adopted under our state constitution, would be inapplicable to illegal subpoenas

issued to defendants' banks by the attorney general, who is chargeable for the illegality.

We leave for another day the issue of whether to apply in appropriate circumstances a good faith exception to the exclusionary rule to article I, section 14 of the Utah Constitution.[4]

We remand to the district court with instructions to suppress all evidence obtained from defendants' banks by illegal subpoenas. The convictions are reversed, and a new trial is ordered.

HALL, C.J., concurs.

ZIMMERMAN, Justice (concurring):

I concur in the opinion of Justice Howe. I write only to address the standing question. Justice Howe implicitly accepts the argument that defendants have standing to raise the violation of their state constitutional privacy interests in their bank records, even though the subpoenas which secured that evidence were not addressed to them. I would note explicitly for the benefit of the bench and bar that in so ruling, we are rejecting the arguments advanced by the State that we should follow federal standing law and deny those not directly subjected to the search any right to challenge its legality. *See generally Rakas v. Illinois*, 439 U.S. 128, 133, 99 S.Ct. 421, 425, 58 L.Ed.2d 387 (1978); *Stone v. Powell*, 428 U.S. 465, 486–89, 96 S.Ct. 3037, 3048–50, 49 L.Ed.2d 1067 (1976).

I find this entirely appropriate. Even where federal rights are at stake, standing law is state law, and we are not bound to follow federal precedent. *Provo City Corp. v. Willden*, 768 P.2d 455, 456–57 (Utah 1989). In the area of search and seizure, the federal courts have developed extraordinarily restrictive doctrines that have the effect, if not the purpose, of placing a large percentage of illegal activities beyond the scrutiny of the courts. *See*

---

**3.** Amended 1988 Utah Laws ch. 101, § 5; 1989 Utah Laws ch. 123, § 1.

**4.** The Supreme Court of Connecticut recently held that the good faith exception to the exclusionary rule was incompatible with its constitu-

tion. *State v. Marsala*, 216 Conn. 150, 579 A.2d 58 (1990). In footnote 14 of that court's opinion, cases from many states are listed on both sides of the question.

*United States v. Salvucci*, 448 U.S. 83, 85, 100 S.Ct. 2547, 2549, 65 L.Ed.2d 619 (1980); *United States v. Payner*, 447 U.S. 727, 731–32, 100 S.Ct. 2439, 2444, 65 L.Ed.2d 468 (1980); *United States v. Obregon*, 748 F.2d 1371, 1375 (10th Cir.1984). I see no reason for us to follow suit, especially when state constitutional rights, which we have a peculiar obligation to protect, are at stake.

DURHAM, J., concurs in the concurring opinion of ZIMMERMAN, J.

STEWART, J., dissents; opinion will follow.