STATE of Utah, Plaintiff and Appellant,

v.

Angelo GIRON, Defendant and Appellee.

No. 960203–CA.

Court of Appeals of Utah.

July 1, 1997.

Jan Graham and Kenneth A. Bronston, Salt Lake City, for Plaintiff and Appellant.

Linda M. Jones, Salt Lake City, for Defendant and Appellee.

Before DAVIS, WILKINS and BILLINGS, JJ.

## AMENDED OPINION [1]

WILKINS, Associate Presiding Judge:

The State of Utah appeals the final order of dismissal entered against it in the prosecution of Angelo Giron for unlawful possession of a controlled substance, a third degree felony, in violation of Utah Code Ann. § 58–37–8(2)(a)(i) (Supp.1996). The trial court certified that it dismissed the case with prejudice after it granted Giron's motion to suppress evidence because the suppression order rendered the prosecution unable to proceed. *See State v. Troyer*, 866 P.2d 528, 531 (Utah 1993). Therefore, on appeal, the State contests the trial court's order suppressing evidence. We reverse and remand.

## BACKGROUND

We recite the facts in the "light most favorable to the trial court's findings from the suppression hearing." *State v. Moreno,*

910 P.2d 1245, 1246 (Utah.Ct.App.), *cert. denied,* 916 P.2d 909 (Utah 1996).

In January 1995, Officers Bench and Ruth, who were motor patrolling the west side of Salt Lake City, saw a car make an improper U-turn. The officers signaled for the car to stop, which it promptly did. Officer Bench approached the driver, Giron, and asked for his driver's license. Giron instead produced a Utah identification card.

Meanwhile, Giron's passenger got out of the car and started walking away while discarding what appeared to be narcotics. Seeing this, Officer Ruth tried to apprehend the passenger, who began to run away. Officer Ruth ran after the passenger and a struggle followed. Seeing that Officer Ruth needed help, Officer Bench told Giron to wait while he assisted Officer Ruth. Instead of waiting, however, Giron drove away, squealing his tires as he left.

After arresting and booking Giron's passenger, Officers Bench and Ruth tried to find Giron. The officers conducted a record check from Giron's identification card and discovered that Giron's driver's license had been suspended. They also learned the address of Giron's residence. As a result, approximately three hours after the original stop, the officers went to Giron's residence. Because they did not find anyone there, they left.

Shortly after leaving Giron's residence, the officers again saw him driving the same car, but with a different passenger. The officers again signaled for Giron to stop, using lights and a siren. However, this time Giron did not promptly stop. Instead, he continued driving for about another block, making two turns before he finally stopped across the street from his residence.

After Giron finally stopped, Officer Bench told him he was under arrest for disobeying the order to remain at the scene of the original stop. Giron got out of the car, and Officer Bench immediately handcuffed him and placed him in the police car. Officer Bench ran a check on Giron's car and learned it was properly registered to Giron.

---

1. This Amended Opinion replaces the Opinion in

Case No. 960203–CA issued on April 24, 1997.

Officer Bench then proceeded to impound Giron's car. As part of the impound, Officer Bench conducted an inventory search of the car. Officer Bench found cocaine under the driver's seat, a syringe between the driver's seat and the console, another syringe and a knife under the passenger seat, spoons on the back seat floor, a set of scales in a garbage bag on the back seat, and several empty plastic baggies throughout the interior of the car. After searching the vehicle, Officer Bench called for a second officer to complete the impound so that he could transport Giron to jail.

In the trial court, Giron moved to suppress the evidence found in his car, arguing that the officers had no authority to impound his car and that the inventory search was a mere pretext for an investigatory search. The State originally argued only that the search was a valid inventory search. However, after the evidentiary hearing on the motion to suppress, the trial court granted both parties leave to file memoranda. The State then argued in its supplemental memorandum that the search was a valid search incident to Giron's arrest. After the supplemental memoranda were filed, the State and Giron orally argued the merits of their arguments, including the merits of the State's search incident to arrest argument.

The trial court granted Giron's motion and ordered that the evidence be suppressed. Among its findings, the court found that, at the time Officer Bench searched Giron's car, "any possibility of Mr. Giron gaining access to the car for purposes of recovering a weapon, or concealing or destroying evidence had been completely eliminated by the arrest, handcuffing, and the removal of the Defendant from the area of the vehicle." The court then made the following four conclusions of law: (1) because Giron's car was parked across from his residence, "impoundment was neither authorized nor necessary"; (2) even if the impoundment was justified, the inventory search was "merely a pretext for an investigatory search for evidence"; (3) "there was no physical or temporal proximity to the arrest" after Giron had been arrested and placed in the police car, and there was "no basis to justify the search of Defendant's

vehicle as a search incident to his arrest"; and (4) the search violated the Fourth Amendment of the United States Constitution and article I, section 14 of the Utah Constitution, so the evidence should be suppressed.

After the trial court suppressed the evidence found in Giron's car, the State no longer had sufficient evidence to prosecute its case. Therefore, the court, following the procedure outlined in *Troyer*, dismissed the case with prejudice. *See Troyer*, 866 P.2d at 531 (requiring trial court certify that evidence suppressed substantially impaired prosecution's case in order for State to appeal). The State then filed this appeal.

## ISSUES AND STANDARD OF REVIEW

On appeal, the State asserts the following three arguments to support its contention that the trial court erred in suppressing the evidence: (1) Giron's car was lawfully impounded; (2) the court erred in condemning the post-impoundment inventory search of Giron's car as "pretextual"; and (3) Giron's car was lawfully searched incident to Giron's arrest.

██ "The factual findings underlying a trial court's decision to grant or deny a motion to suppress evidence are reviewed under the deferential clearly-erroneous standard, [but] the legal conclusions are reviewed for correctness, with a measure of discretion given to the trial judge's application of the legal standard to the facts." *Moreno*, 910 P.2d at 1247; *see also State v. Pena*, 869 P.2d 932, 935–40 (Utah 1994).

## ANALYSIS

### I. Inventory Search

██ We first address the State's argument that the inventory search following the impoundment of Giron's car was valid. The State makes this argument by asserting the trial court erred in concluding (1) the impoundment of Giron's vehicle was not "authorized or necessary," and (2) the inventory search was "merely a pretext" for an unlawful investigatory search for evidence.

For an inventory search of a lawfully impounded vehicle to be reasonable under the Fourth Amendment, the officer conducting the search must follow standardized procedures. *See Colorado v. Bertine,* 479 U.S. 367, 375, 107 S.Ct. 738, 743, 93 L.Ed.2d 739 (1987) (stating police officer may impound car and conduct inventory search "so long as [officer's] discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity"); *South Dakota v. Opperman,* 428 U.S. 364, 372, 96 S.Ct. 3092, 3098–99, 49 L.Ed.2d 1000 (1976) (stating "inventories pursuant to standard police procedures are reasonable" under Fourth Amendment). The State has the burden of introducing evidence that such a standardized, reasonable procedure exists "and that the challenged police activity was essentially in conformance with that procedure." *State v. Strickling,* 844 P.2d 979, 987–88 (Utah.Ct.App.1992).

The trial court supported its conclusion that the inventory search was invalid by finding the search was

> carried out in a manner contrary to established Salt Lake City [p]olice [p]rocedures for an inventory search in the following particulars:
>
> (a) Inventory forms were not used.
>
> (b) No written list of items found was made.
>
> (c) There was no attempt to contemporaneously record what was found where.
>
> (d) There was no attempt to involve Mr. Giron, his passenger, or others at Mr. Giron's residence in the decisions [to] impound.

Because finding (d) has not been shown to be a required standardized procedure for Salt Lake City police officers, it is irrelevant to our analysis. However, findings (a) through (c) address standardized procedures Salt Lake City police officers are required to follow in conducting an automobile inventory search.

The State argues findings (a) through (c) were clearly erroneous because Officer Russell, the officer who responded to Officer Bench's call for assistance and who conducted an inventory search after he arrived, followed these procedures. However, this argument ignores the fact that the inventory search at issue is the search conducted by Officer Bench, and that Officer Bench did not follow the necessary procedures, as outlined by the court's findings (a) through (c). Although two officers may, in some situations, work together to conduct a valid automobile inventory search, in this case it appears that the two officers conducted two searches independently of each other. Officer Bench first searched Giron's car. Officer Bench did not use any inventory forms, make a written list of the items he found, or try to contemporaneously record where he found those items. Officer Russell testified that after he arrived, he conducted a second search of Giron's car as if Officer Bench had not searched Giron's car.

The trial court found that Officer Bench discovered the suppressed evidence while conducting an inventory search, and that he did not follow the department's standardized procedures for such searches. We conclude the State has failed to show that this finding is clearly erroneous because the State has only shown how Officer Russell, not Officer Bench, followed standardized procedures in conducting his search of Giron's car. Because officers must follow standardized procedures in conducting an inventory search for the search to be valid, and Officer Bench did not follow standardized procedures in searching Giron's car, we also conclude Officer Bench's inventory search of Giron's car was invalid under the Fourth Amendment.

Because we conclude the inventory search was invalid, we need not address the State's arguments that the impoundment of Giron's car was valid and that the trial court should not have engaged in a pretext analysis under current Fourth Amendment law.

## II.  Search Incident to Arrest

### A.  Federal Constitution

We next address the State's argument that Giron's car was lawfully searched incident to Giron's arrest.

According to the rule allowing a search incident to an arrest, an arresting officer may, without a warrant, lawfully

search the area surrounding the person he or she is arresting if: (1) the arrest is lawful, *see New York v. Belton*, 453 U.S. 454, 458, 460, 101 S.Ct. 2860, 2863, 2864, 69 L.Ed.2d 768 (1981); (2) the search is of the area within the arrestee's immediate control, *see Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969); and (3) the search is conducted contemporaneously to the arrest, *see id.* at 764, 89 S.Ct. at 2040; *Marron v. United States*, 275 U.S. 192, 199, 48 S.Ct. 74, 77, 72 L.Ed. 231 (1927). In other words, the search must be conducted pursuant to a lawful arrest and cannot be " 'remote in time or place from the arrest.' " *Chimel*, 395 U.S. at 764, 89 S.Ct. at 2040 (quoting *Preston v. United States*, 376 U.S. 364, 367, 84 S.Ct. 881, 883, 11 L.Ed.2d 777 (1964)).

█ The trial court found that Giron's arrest was lawful, and Giron has not contested that finding. However, the court also concluded "[t]hat at the time of the search the Defendant had been secured and removed from the area, that there was no physical or temporal proximity to the arrest, and no basis to justify the search of Defendant's vehicle as a search incident to his arrest." In other words, the court determined the search was too remote in time and place from the arrest to be lawful. We therefore focus our analysis on the court's determination that the search lacked the requisite physical and temporal proximity to the arrest.

We first address the court's determination that the search was too remote in place, or lacked the requisite physical proximity to the arrest, to be lawful. In doing so, we examine opinions issued by the United States Supreme Court and this court that have addressed the physical proximity requirement in terms of the situation posed in this case, in which a car is searched after the car's occupant has been arrested.

█ In *Belton*, the United States Supreme Court, in explaining when a police officer can search a car incident to the arrest

of the car's occupant, addressed the physical proximity requirement that the search must be of the area within the arrestee's immediate control. *See Belton*, 453 U.S. at 459–60, 101 S.Ct. at 2863. The Court acknowledged that this requirement had caused a significant amount of confusion in cases involving the search of a vehicle after its occupant was arrested. As a result, the Court set forth a "straightforward" test designed to eliminate the " 'subtle nuances and hairline distinctions' " previously existing in case law. *Id.* at 458, 459, 101 S.Ct. at 2863 (citation omitted). The rule established by the Court is: "[W]hen a police[ officer] has made a lawful custodial arrest of the occupant of an automobile, he [or she] may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *Id.* at 460, 101 S.Ct. at 2864. The Court further clarified that this rule allows a police officer to search the passenger area of the car even when, as in this case, the arrested occupant of the car has already been handcuffed and removed from the car. *See id.* at 456, 462–63, 101 S.Ct. at 2862, 2865. In other words, a search conducted of the arrestee's car is not too remote in place, or does not lack the requisite physical proximity to the arrest, even when the arrestee has been handcuffed and removed from the car.

This court applied the *Belton* rule most recently in *State v. Moreno.*[2] In *Moreno*, as in this case, the defendant was handcuffed and seated in the police car at the time his vehicle was searched. *See Moreno*, 910 P.2d at 1246, 1248. This court held that, following *Belton* and Utah case law, the search of the defendant's vehicle was valid because "[t]he search of the passenger compartment of defendant's vehicle was contemporaneous with his lawful arrest." *Id.* at 1249. With that statement, this court implicitly acknowledged both the physical proximity requirement, by specifying the search was of the passenger compartment, and the temporal proximity requirement, by specifying the search was contemporaneous with the arrest. Therefore, in

---

**2.** *State v. Moreno*, 910 P.2d 1245 (Utah.Ct.App.), *cert. denied*, 916 P.2d 909 (Utah 1996), was issued seven days before the trial court in this case issued its final findings and conclusions, over a month before the court entered its order dismissing the case, and almost two months before the court, pursuant to *State v. Troyer*, 866 P.2d 528, 531 (Utah 1993), certified that the case was dismissed.

*Moreno,* this court followed *Belton* and reaffirmed the physical and temporal proximity requirements of a search incident to an arrest.

In light of *Belton* and *Moreno,* Giron conceded at oral argument that the trial court erred in determining the search of Giron's car lacked the requisite physical proximity to the arrest to be a valid search. Nevertheless, we have highlighted the law outlined in *Belton* and *Moreno* to show that the trial court was operating under a misunderstanding of the law. The trial court's erroneous understanding of the law is further highlighted by its finding that, at the time Officer Bench searched Giron's car, "any possibility of Mr. Giron gaining access to the car for purposes of recovering a weapon, or concealing or destroying evidence had been completely eliminated by the arrest, handcuffing, and removal of the Defendant from the area of the vehicle." This finding is directly contrary to the holdings of both *Belton* and *Moreno,* both of which establish that the passenger area of a car is deemed to be within the arrestee's area of immediate control, even if the arrestee, like Giron, is handcuffed and no longer in the car.

Because we agree with the parties that the trial court erred in determining the search did not have the physical proximity to the arrest to be valid, we next turn to the final issue of whether the trial court erred in ruling the search was also invalid because it lacked the requisite temporal proximity to the arrest.

Unlike the trial court's determination regarding the lack of physical proximity, the trial court did not make any additional findings to support its determination regarding the lack of temporal proximity. As a result, it is impossible to tell exactly what the court based its determination on. We do know, however, that the court was already operating under a misunderstanding of the law regarding the physical proximity requirement. Therefore, we first clarify the law regarding the temporal proximity requirement.

According to *Belton* and *Moreno,* the temporal proximity requirement is that the search must be "contemporaneous" to the arrest. *See Belton,* 453 U.S. at 460, 101 S.Ct. at 2864; *Moreno,* 910 P.2d at 1249. That a search incident to an arrest must be "contemporaneous" with the arrest has been the temporal proximity requirement articulated by Utah courts for several years. *See State v. Banks,* 720 P.2d 1380, 1383–84 (Utah 1986); *State v. Christensen,* 676 P.2d 408, 411 (Utah 1984); *State v. Kent,* 665 P.2d 1317, 1319 (Utah 1983) (Durham, J., concurring); *State ex rel. K.K.C.,* 636 P.2d 1044, 1046 (Utah 1981) (per curiam); *State v. White,* 577 P.2d 552, 554 n. 6 (Utah 1978); *State v. Shields,* 28 Utah 2d 405, 408, 503 P.2d 848, 850 (1972); *State v. Rochell,* 850 P.2d 480, 484 (Utah.Ct.App.1993); *State v. Harrison,* 805 P.2d 769, 784 (Utah.Ct.App. 1991); *State v. Ayala,* 762 P.2d 1107, 1111 (Utah.Ct.App.1988).

"Contemporaneous" in common usage is defined as "[a]rising, existing, or occurring during the same period of time." *Webster's II New Riverside University Dictionary* 304 (1994). This definition comports with Utah cases that have held certain fact situations fit the contemporaneous requirement. *See, e.g., K.K.C.,* 636 P.2d at 1046 (per curiam) (holding search of pickup truck was contemporaneous to arrest, even though search may have occurred immediately before formal arrest); *State v. Spurgeon,* 904 P.2d at 223, 228 (Utah.Ct.App.1995) (holding search of car performed after officer arrested occupants and called for backup assistance was valid search incident to arrest); *see also United States v. Willis,* 37 F.3d 313, 318 (7th Cir. 1994) (upholding search incident to arrest where police officer first looked in patrol car for camera to take photographs); *Staten v. United States,* 562 A.2d 90, 90–91, 93 (D.C.Ct.App.1989) (holding search was contemporaneous with driver's arrest where, after arresting driver, police searched him, ran computer check to determine ownership of car, ordered two passengers out of car, searched them, found glove compartment locked, took keys from ignition, verified with car's owner which key unlocked glove compartment, used key to unlock glove compartment, then conducted search and recovered weapon); 3 Wayne R. LaFave, *Search & Seizure* § 7.1(c), at 448 (3d ed. 1996) ("[T]he

fact that in almost all cases the search will be undertaken at the place of arrest is, as a practical matter, likely to overcome any problems as to temporal proximity.").

■ Treating the contemporaneous requirement as a requirement that the search occur during the same period of time as the arrest also comports with the spirit of *Belton*, which sought to establish a "straightforward" rule that would eliminate " 'subtle nuances and hairline distinctions.' " *Belton*, 453 U.S. at 458, 459, 101 S.Ct. at 2863 (citation omitted). Indeed, despite the oft-repeated assertion that search cases are highly fact intensive, *see, e.g., Spurgeon*, 904 P.2d at 222, *Belton* sought to establish a rule designed to eliminate an excessively detail-focused analysis from the search incident to arrest rule in situations involving the search of a car recently occupied by the arrestee, as in this case. *See Belton*, 453 U.S. at 458–60, 101 S.Ct. at 2863–64. Therefore, we conclude the contemporaneous requirement, in the context of a search of a car incident to the arrest of its occupant, requires only a routine, continuous sequence of events occurring during the same period of time as the arrest.

■ Turning to the facts of this case, we examine the record to determine if Officer Bench's search of Giron's car was contemporaneous to Giron's arrest. We note that when the evidentiary hearing was conducted, neither Giron nor the State focused on the search incident to arrest doctrine.[3] Consequently, neither party asked Officer Bench how much time elapsed between Giron's arrest and Officer Bench's search of Giron's car, or if Officer Bench was sidetracked from making his search by intervening events. Officer Bench's testimony appears to describe one continuous stream of events that occurred during the same period of time. Officer Bench testified that he arrested Giron, handcuffed him, and placed him in the police car. Officer Bench testified that he then ran a check on Giron's car and learned that it was properly registered to Giron. Officer Bench further testified that after learning this information, he searched Giron's car and found the contested evidence.

However, although Officer Bench's testimony appears to describe a continuous sequence of events, we conclude the record is not detailed enough on this point for us to determine, as a matter of law, whether the car search was part of a continuous sequence of events immediately following Giron's arrest. Therefore, we cannot determine whether the search was conducted contemporaneously to Giron's arrest.

## B. State Constitution

■ In addition to his Fourth Amendment argument, Giron argues that article I, section 14 of the Utah Constitution provides greater protection than that afforded by *Belton* and *Moreno*, both of which interpreted only the Fourth Amendment. Giron thus argues that even if the search was valid under the Fourth Amendment, it was invalid under article I, section 14. In support of his argument, Giron quotes from the analysis in *State v. Larocco*, 794 P.2d 460 (Utah 1990) (plurality opinion), and cites to *State v. Gardiner*, 814 P.2d 568 (Utah 1991), and *State v. Thompson*, 810 P.2d 415 (Utah 1991). In each of those cases, the Utah Supreme Court recognized that article I, section 14 can be interpreted to provide more protection than that afforded under the Fourth Amendment. *See Gardiner*, 814 P.2d at 571 (noting principle that warrantless searches are unreasonable "has as much, if not more, force under the Utah Constitution" as under Federal Constitution); *Thompson*, 810 P.2d at 418 (holding that, even though Fourth Amendment may not provide such protection, under article I, section 14 of Utah Constitution, defendants have right to be secure against unreasonable searches and seizures of their bank papers); *Larocco*, 794 P.2d at 471 (plurality opinion) (holding that opening of car door during warrantless search for vehicle identification number constituted unreasonable search under article I, section 14 of Utah Constitution). In addition, in *Larocco*, the plurality opinion set forth an analysis under article I, section 14 that differed from a Fourth Amendment analysis. *See generally id.* at 465–71.

---

3. We note, however, the search incident to arrest issue was clearly before the trial court during the hearing on the motion to suppress as the court made specific determinations on the search inci-

dent to arrest issue. *Cf. State v. Marshall*, 791 P.2d 880, 886 (Utah.Ct.App.1990) (refusing to consider State's argument raised for first time on appeal).

However, although the Utah Supreme Court has recognized that article I, section 14 of the Utah Constitution can provide greater protection than the Fourth Amendment, the supreme court has not agreed on what protection article I, section 14 provides. Because *Larocco* was only a plurality opinion, its analysis is not binding. As this court has previously noted:

> The precedential value of the *Larocco* rationale is somewhat unclear ... because Justice Durham's reasoning was joined by only Justice Zimmerman. Justice Stewart concurred in the result, but provided no insight into his rationale. Because he concurred only in the result, and because Justice Durham arrived at the result by using state constitutional analysis, it is possible that Justice Stewart arrived at his conclusion strictly through a Fourth Amendment approach.

*Strickling*, 844 P.2d at 985 n. 2; *see also State v. Anderson*, 910 P.2d 1229, 1234–35 n. 5 (Utah 1996) (plurality opinion) ("The plurality opinion in *Larocco* represents the views of only two justices of this court and is therefore not the law of this state."); *cf. Sims v. State Tax Comm'n*, 841 P.2d 6, 15 (Utah 1992) (Stewart, J., concurring in result) ("I write separately because I think it essential to observe that [Justice Durham's] sweeping opinion [analyzing article I, section 14 of the Utah Constitution] represents the views of only two justices of this Court and is therefore not the law of this state."). In fact, Justice Stewart has since stated that his concurrence in *Larocco* did not signal his acceptance of Justice Durham's state constitutional analysis. *See State v. Poole*, 871 P.2d 531, 536 (Utah 1994) (Stewart, J., concurring) ("[In *Larocco*,] I concurred only in the result and not in any statement in the majority opinion. Nor, indeed, did my vote indicate acceptance of the constitutional theory asserted therein.").

Thus, given the lack of supporting precedential authority, we decline to accept Giron's argument that we follow *Larocco* and extend him greater protection under article I, section 14 of the Utah Constitution. Instead, we follow Utah cases, by which we are bound, that have applied the same analysis we have followed above to both federal and Utah constitutional challenges to automobile searches performed incident to the arrest of the car's occupant. *See, e.g., K.K.C.*, 636 P.2d at 1046 (per curiam) (applying *Belton*-type analysis in case challenging search of car incident to arrest which was brought under both Fourth Amendment of United States Constitution and article I, section 14 of Utah Constitution).[4]

## CONCLUSION

We conclude that although Officer Bench did not conduct a valid inventory search of Giron's car, Officer Bench's search may have been a constitutionally reasonable search,[5] as a search incident to Giron's arrest. Because the trial court was operating under a misunderstanding of the law, it erred in determining the search lacked the requisite physical proximity to be a valid search incident to arrest. However, on the record before us, we cannot determine whether the court also erred in determining the search lacked the requisite temporal proximity. Therefore, we remand this case for the trial court to apply the law as set forth in this opinion on the evidence previously presented to the trial court at the hearing on the motion to suppress.

Reversed and remanded.

DAVIS, P.J., and BILLINGS, J., concur.

---

**4.** We also reject Giron's argument that Utah case law requires us to examine whether probable cause and exigent circumstances exist. The court in *Moreno* did not apply such an analysis, *see Moreno*, 910 P.2d at 1247, and we are bound to follow that opinion.

**5.** *See New York v. Belton*, 453 U.S. 454, 459, 101 S.Ct. 2860, 2863, 69 L.Ed.2d 768 (1981) (" '[I]n

the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a "reasonable" search under that Amendment.' " (quoting *United States v. Robinson*, 414 U.S. 218, 235, 94 S.Ct. 467, 477, 38 L.Ed.2d 427 (1973))).