**2018 UT App 211**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
JENNIFER ORYALL,
Appellant.

Opinion
No. 20170110-CA
Filed November 8, 2018

Fourth District Court, Provo Department
The Honorable James R. Taylor
No. 161400218

Douglas J. Thompson, Margaret P. Lindsay, and
Dustin M. Parmley, Attorneys for Appellant

Sean D. Reyes and Marian Decker, Attorneys
for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES GREGORY K. ORME and JILL M. POHLMAN concurred.

HARRIS, Judge:

¶1     May a police officer, without reasonable suspicion of criminal activity, run a license plate check on a passing vehicle? The federal courts, interpreting the U.S. Constitution, have answered this question in the affirmative. Jennifer Oryall, who was found to be driving under the influence of drugs after an officer checked her license plate and detained her, asks us to conclude that law enforcement officers violated the Utah Constitution by performing such a check without reasonable suspicion that Oryall was engaged in criminal activity. The district court was not persuaded by Oryall's arguments, and neither are we. Accordingly, we affirm.

BACKGROUND

¶2     Jennifer Oryall was driving on State Road 198 in Payson, Utah, when she passed a police officer (Officer) who was parked on the side of the road running license plate checks on passing cars. Officer ran Oryall's license plate number through a government-managed electronic database containing vehicle registration records. This check revealed that the vehicle was registered to Oryall, a person Officer had previously encountered in his law enforcement career. Intrigued, Officer then ran a check on Oryall's driver's license records in a separate government-managed electronic database. This check revealed that Oryall's driver's license was suspended. Officer then sought to confirm that Oryall was indeed the driver of the vehicle, and he watched as the car parked at a nearby convenience store. He then saw Oryall exit the vehicle and go inside, allowing him to confirm her identity.

¶3     After Oryall walked out of the convenience store, she got back in her car and resumed driving, and Officer initiated a traffic stop. Officer immediately observed that Oryall manifested several signs of impairment, including white powder in and around her nostrils, glossy eyes, constricted pupils, foam on her lips, muscle and eyelid tremors, and slurred speech. Officer then performed field sobriety tests and determined that Oryall was impaired. Oryall later confessed to having ingested a number of controlled substances prior to driving. Oryall was arrested and later charged with driving under the influence, a third degree felony, possessing drug paraphernalia, a class B misdemeanor, and driving on a suspended license, a class C misdemeanor.

¶4     Following a preliminary hearing, the magistrate dismissed the drug paraphernalia charge, but bound Oryall over for trial on the two remaining charges. Oryall then moved to suppress all evidence from her traffic stop. In the memorandum accompanying her motion, Oryall argued that the Utah Constitution "[conferred] an expectation of privacy in motor

vehicle and driver records," that the Utah Government Records Access and Management Act (GRAMA) recognized that expectation, and that therefore, under Utah law, police officers are not entitled to check license plates against the government-managed databases containing vehicle registration or driver's license information without a reasonable suspicion of criminal activity. The district court denied Oryall's motion to suppress. Later, Oryall entered into a plea agreement with the State pursuant to which she entered a conditional guilty plea to the felony DUI charge, reserving the right to appeal the court's denial of her motion to suppress,[1] and the State agreed to the dismissal of the remaining misdemeanor count.

## ISSUE AND STANDARD OF REVIEW

¶5    Oryall now exercises that right to appeal, and asks us to reverse the district court's denial of her motion to suppress. A district court's denial of a motion to suppress presents a mixed question of law and fact. *State v. Fuller*, 2014 UT 29, ¶ 17, 332 P.3d 937. In this context, we review a district court's factual findings for clear error and its legal conclusions, including its application of law to the facts of the case, for correctness. *Id*.

## ANALYSIS

¶6    The Utah Constitution protects "[t]he right of the people to be secure in their persons, houses, papers and effects against

---

1. Under rule 11(j) of the Utah Rules of Criminal Procedure, if approved by the court and consented to by the prosecution, a criminal defendant may enter a conditional guilty plea, reserving the right to appeal an "adverse determination of any specified pre-trial motion," and the right to "withdraw the plea" if the appeal is successful.

unreasonable searches and seizures." Utah Const. art. I, § 14. As pertinent here, this provision "prohibits state actors from unreasonably intruding into areas where citizens have a legitimate expectation of privacy." *Schroeder v. Utah Attorney Gen.'s Office*, 2015 UT 77, ¶ 22, 358 P.3d 1075. Thus, before properly invoking article I, section 14 of the Utah Constitution, a defendant must, as a "threshold" matter, "demonstrat[e] a legitimate expectation of privacy in the area searched." *State v. Atwood*, 831 P.2d 1056, 1058 (Utah Ct. App. 1992) ("The requirement of demonstrating a legitimate expectation of privacy in the area searched is a threshold requirement that a defendant must satisfy in order to establish a violation of constitutional rights."); *see also State v. Larocco*, 794 P.2d 460, 469 (Utah 1990) (stating that "this court will continue to use the concept of expectation of privacy as a suitable threshold criterion for determining whether article I, section 14 is applicable").

¶7     In this case, Oryall contends that, under article I, section 14 of the Utah Constitution, she has a "right to privacy" in both her motor vehicle registration records and her driver's license records that prevents police officers from accessing those records without reasonable suspicion of criminal activity, even though those records are collected and kept by governmental agencies. She asserts that this "right to privacy" was violated in this case, because it is undisputed that Officer accessed her records before forming a reasonable suspicion of criminal activity. Accordingly, she argues that the district court erred in denying her motion to suppress all of the evidence resulting from Officer's check of her license plate, vehicle registration, and driver's license records.

¶8     Before examining Oryall's argument in detail, we pause first to note that federal appellate courts, interpreting the federal constitution, have unanimously determined that law enforcement officers may conduct warrantless and suspicionless checks of passing motorists' vehicle registration and driver's license information. *See, e.g.*, *United States v. Miranda-Sotolongo*, 827 F.3d 663, 667 (7th Cir. 2016) (stating that "[a] police officer's

check of a vehicle registration in a database is not a Fourth Amendment search," and noting that "every other circuit that has considered this issue has [so] held"). Federal courts reason that, because a vehicle registration check "involves only checking publicly displayed registration information against official public records," it is not substantively different from comparing "a photograph of a person against mug shots or latent fingerprints against FBI fingerprint records." *Id.* at 668.

¶9   Furthermore, we are aware of no other state that has construed its own constitution to require an officer to have a warrant (or at least reasonable suspicion) before checking a motorist's vehicle registration or driver's license records. *See, e.g.*, *State v. Richter*, 765 A.2d 687, 688 (N.H. 2000) (holding that an officer's check of "motor vehicle licenses and records" did not constitute a search within the meaning of the state constitution, because "the state is the very body that issues, controls, and regulates such licenses and records" (quotation simplified)); *see also People v. Bushey*, 75 N.E.3d 1165, 1166–68 (N.Y. 2017) (holding that a defendant had no "reasonable expectation of privacy in either his license plate or the information lawfully obtained and accessible through the DMV database").

¶10   Oryall asks us to strike a different path under the Utah Constitution, and makes two specific arguments in support of her position. First, she cites *State v. Thompson*, 810 P.2d 415 (Utah 1991), and points out that, on occasion, our supreme court has interpreted the Utah Constitution's prohibition on "unreasonable searches and seizures," *see* Utah Const. art I, § 14, more broadly than federal courts have interpreted the similarly-worded Fourth Amendment, and argues that we should do likewise here. Second, she asserts that our legislature, in passing GRAMA, "recognized" a state constitutional right to privacy in documents such as the ones found in the databases containing vehicle registration and driver's license information. We find neither of Oryall's arguments persuasive.

¶11     First, *Thompson* is entirely distinguishable from the case at hand. In that case, a prosecutor issued a subpoena—ultimately determined to be an illegal subpoena, *see Thompson*, 810 P.2d at 419[2]—to a third-party financial institution in an effort to obtain bank records relevant to various defendants suspected of bribery, racketeering, and antitrust violations. *Id*. at 415. The prosecutor was able to obtain the documents from the bank, and presented some of those documents as evidence at trial. *Id*. at 416. Defendants were convicted after a jury trial and appealed, arguing that, unlike the federal Constitution, the Utah Constitution afforded to individuals a right of privacy in bank records held by a third-party financial institution and, therefore, that they had a constitutional right against unreasonable searches of those records. *Id*. at 415–16. Our supreme court agreed with the defendants, stating that "it is virtually impossible to participate in the economic life of contemporary

---

2. In *Thompson*, the Utah Supreme Court made clear that, had the subpoena in question been legally issued, there would have been no constitutional problem with the prosecutor obtaining the bank records. *See State v. Thompson*, 810 P.2d 415, 418 (Utah 1991) (stating that "[a] bank can be compelled to turn over a customer's records when served with a lawful subpoena," and that "the depositor or customer cannot maintain a constitutional challenge to evidence gathered pursuant to a subpoena duces tecum lawfully issued to his bank"). Indeed, the Utah Supreme Court recently noted that *Thompson* "stands for the unremarkable proposition that there is no violation of article I, section 14 when the state obtains bank records through a reasonable search and seizure," and that "whatever 'right of privacy' individuals may have in their bank records, the Utah Constitution permits the state to intrude upon it 'pursuant to a subpoena' that is 'lawfully issued' to a bank." *See Schroeder v. Utah Attorney Gen.'s Office*, 2015 UT 77, ¶ 24, 358 P.3d 1075 (quoting *Thompson*, 810 P.2d at 418).

society without maintaining an account with a bank," and that therefore "opening a bank account is not entirely volitional and [does not] constitute[] a waiver of an expectation of privacy." *Id.* at 418 (quotation simplified). The court concluded that "it is reasonable for our citizens to expect that their bank records will be protected from disclosure" to the government. *Id.* (quotation simplified). Accordingly, the court held that that the Utah Constitution establishes a right to privacy for all records "supplied to [a] bank to facilitate the conduct of . . . financial affairs upon the reasonable assumption that the information [will] remain confidential." *Id.* (quotation simplified).

¶12    Oryall urges that vehicle registration and driver's license records, like bank records, contain information that the subject of the record may consider private or confidential. Oryall further contends that "it is reasonable for our citizens to expect [that] personal data compiled by the government" will be protected from disclosure because, like opening a bank account, "it is virtually impossible to participate in contemporary society without . . . registering motor vehicles [or] obtaining drivers licenses or other ID cards." Accordingly, Oryall contends that her vehicle registration and driver's license records should have been protected from Officer's suspicionless search.

¶13    We see the matter differently. Significant details distinguish the sort of search contemplated in *Thompson* from Officer's examination of Oryall's records, not least of which is the fact that, in *Thompson*, government officials sought records that were in the possession of third-party banks, *Thompson*, 810 P.2d at 416, whereas in this case the records Officer sought were issued, controlled, and regulated by the very government from which Oryall sought to protect them. It is one thing to hold that the constitution recognizes a right to privacy that prevents the government—without a lawful warrant or subpoena—from accessing information that a citizen has entrusted to a third party, such as a bank or a mobile phone provider. *See Thompson*, 810 P.2d at 418; *see also Carpenter v. United States*, 138 S. Ct. 2206,

2217, 2219-20 (2018) (declining to extend the federal "third-party doctrine" to cell-site location information, and holding that citizens have a "reasonable expectation of privacy" in cell-site location information held by third-party mobile phone providers). But it is quite another thing to hold that the constitution recognizes a right of privacy that would prevent a law enforcement officer—part of the state or local government—from accessing information that another part of that same government already lawfully possesses. We therefore decline Oryall's invitation to extend *Thompson* in such a way as to prohibit the government from accessing information already in its lawful possession.

¶14    Next, Oryall directs our attention to GRAMA, and points out that, in the "legislative intent" section of that statute, our legislature expressly "recognize[d]" the citizenry's constitutional "right of privacy in relation to personal data gathered by governmental entities." *See* Utah Code Ann. § 63G-2-102(1) (LexisNexis 2016). But even assuming GRAMA applies here,[3] GRAMA cannot shoulder the load that Oryall attempts to place upon it. As an initial matter, GRAMA was enacted to balance two competing rights: the "public's right of access to information concerning the conduct of the public's business," and the public's right of privacy in whatever personal data the government may have already collected. *See id.* The "right of privacy" to which GRAMA refers is, in context and generally speaking, a reference to a conceptual limit on the public's right

---

3. The State argues that GRAMA's protections "extend only to 'personal data gathered' by the State," and that because automobile registration certificates and driver's licenses are issued by the State, GRAMA does not apply to those records. We do not reach the merits of this argument, and simply assume, for purposes of our analysis, that automobile registration and driver's license records fall within the ambit of GRAMA.

to access governmental information, and not a general prohibition on one government agency accessing information possessed by another government agency.

¶15    This principle is borne out by the provisions of GRAMA itself. Three separate statutory subsections appear to give law enforcement officers the right to access records such as vehicle registration and driver's license information. First, GRAMA expressly authorizes one governmental entity to provide private records in its possession to another governmental entity if the requesting entity "enforces . . . or investigates civil, criminal, or administrative law, and the record is necessary to a proceeding or investigation." *See id.* § 63G-2-206(1)(b). Second, GRAMA provides that any governmental entity may disclose private records in its possession to "a government prosecutor [or] peace officer," as long as those records "evidence or relate to a violation of law." *Id.* § 63G-2-206(9). Finally, GRAMA provides that records "to which access is governed . . . pursuant to . . . another state [or] federal statute" are "governed by the specific provisions of" the other statute. *Id.* § 63G-2-201(6)(a). Federal law provides that personal information in the possession of "[a] State department of motor vehicles" "shall be disclosed for use in connection with matters of motor vehicle or driver safety," and "may be disclosed . . . [f]or use by any government agency, including any court or law enforcement agency, in carrying out its functions." *See* 18 U.S.C. § 2721(a) (2000), (b)(1). Oryall does not argue that any of these statutory exceptions built into GRAMA are inapplicable here. And Oryall likewise does not attempt to argue that any of these statutory exceptions are unconstitutional. Accordingly, these statutory provisions are dispositive of Oryall's second argument.

¶16    Having considered and rejected Oryall's two arguments, we are left with nothing else from which we might conclude that Oryall had a reasonable expectation of privacy in her driver's license and vehicle registration records. Therefore, Oryall has failed to make the threshold showing required to establish a

constitutional violation. *See Atwood*, 831 P.2d at 1058 ("The requirement of demonstrating a legitimate expectation of privacy in the area searched is a threshold requirement that a defendant must satisfy in order to establish a violation of constitutional rights."). Accordingly, we have no reason to disturb the district court's denial of Oryall's motion to suppress.

CONCLUSION

¶17 Oryall has failed to establish, as a threshold matter, that she possessed a reasonable expectation of privacy in her motor vehicle registration or driver's license records, and has therefore failed to establish that Officer was constitutionally prohibited from accessing those records, even in the absence of reasonable suspicion that Oryall committed a crime. Accordingly, we affirm the district court's order denying Oryall's motion to suppress.

———————