2000 Utah Ct. App. 58

**Janice L. DEBRY, Plaintiff and Appellant,**

v.

**Delbert T. GOATES, M.D., Defendant and Appellee.**

**No. 981420–CA.**

Court of Appeals of Utah.

March 9, 2000.

Mark L. McCarty and P. Keith Nelson, Richards, Brandt, Miller & Nelson, Salt Lake City, for Appellee.

Before JACKSON, Associate P.J., and BILLINGS, and ORME, JJ.

## OPINION

BILLINGS, Judge:

¶ 1 Plaintiff Janice Debry appeals the trial court's grant of summary judgment in her malpractice claim in favor of defendant Dr. Delbert Goates. Debry argues that the court erred in determining she had no therapist-patient relationship with Dr. Goates, and that even if a relationship was established, she could not assert the privilege because her mental state was put at issue in the divorce proceeding. We reverse.

## BACKGROUND

¶ 2 "'[I]n reviewing a grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. We state the facts in this case accordingly.'" *McNair v. Farris*, 944 P.2d 392, 393 (Utah Ct.App.1997) (quoting *Lopez v. Union Pac. R. Co.*, 932 P.2d 601, 602 (Utah 1997)).

¶ 3 The origins of Debry's complaint against Dr. Goates stem from Debry's two divorce suits. Debry's divorce action against her first husband involved a dispute over the custody and guardianship of the couple's two handicapped children. The trial judge appointed Dr. Goates, a licensed child and adult psychiatrist, to perform a custody evaluation. Dr. Goates met with the children several times, and also met with Debry and her former husband to complete the evaluation. Ultimately, Dr. Goates recommended that the court award custody of the children to Debry.

¶ 4 After the court-ordered evaluation was finished, Dr. Goates maintained a professional relationship with Debry. He saw Debry several times, sometimes with her husband, and prescribed drugs for her. Dr. Goates concedes that Debry was his patient and that he had a therapeutic relationship with her.

Bel–Ami De Montreux, Montreux Freres, PC, Salt Lake City, for Appellant.

¶ 5 The direct source of this litigation is Debry's divorce from her second husband, Robert Debry. In the course of those divorce proceedings, Mr. Debry solicited an affidavit from Dr. Goates wherein Dr. Goates gave his opinion regarding Debry's mental condition. Dr. Goates gave his affidavit without consulting Debry or obtaining her consent.

¶ 6 Dr. Goates signed his affidavit on March 28, 1994. Included in the affidavit was a statement that he had met with Debry approximately twenty times; a statement that he was aware Debry had been treated over a long period for depression; and his conclusion that Debry showed traits of a narcissistic personality disorder. Further, he cautioned that excessive alimony may "feed Mrs. Debry's grandiose fantasies and exploitive tendencies for enhanced self-worth and delusions of grandeur."

¶ 7 Debry filed a motion for a temporary restraining order and request for support in May 1994.[1] The affidavit supporting the motion was signed by Debry on May 26, 1994. Included in the affidavit was an itemized list of expenses showing her monthly financial needs. Among the listed items was $4500 per month for "Medical/Dental/Counseling" expenses.

¶ 8 On May 27, 1994, Robert Debry filed a motion for a court-ordered mental examination of Debry. The supporting memorandum was signed by Robert Debry on May 26, 1994, the same day Debry signed her support motion affidavit. Robert Debry's motion requested an examination for three reasons. First, he asserted that Debry "will undoubtedly seek a support award which included substantial sums for psychotherapy." Robert Debry thus requested an independent mental exam to determine whether Debry's conditions existed prior to the marriage, and to determine appropriate continuing therapy levels.

¶ 9 Second, Robert Debry alleged that Debry's alimony request may be inflated because of delusions of grandeur. He argued:

"[T]his Court will be called upon to determine an appropriate amount of temporary support and alimony. However, the Affidavit of Dr. Goates, filed herewith, shows that [Debry] suffers from grandiose delusions. Therefore, [Debry's] demands for support may be artificially inflated because of [her] alleged mental illness." Finally, he requested that the court appoint a conservator for Debry. The motion and memorandum for a mental examination included Dr. Goates's affidavit in support.

¶ 10 Debry withdrew her request for therapy support. Ultimately, the court denied Robert Debry's request for an examination of Debry. The court ruled, however, that if Debry reinstated her request for therapy support, Robert Debry would be entitled to an independent examination.

¶ 11 Debry in this suit has sued Dr. Goates for malpractice, alleging that he breached her therapist-patient privilege by providing his affidavit to Robert Debry. However, Debry, in her deposition in this litigation, denied that Dr. Goates was her personal therapist or doctor. At various times in her deposition, she stated: "He was never my doctor"; "He was my handicapped kids' doctor"; "He was never working with me"; and "I was never his patient."

¶ 12 The trial court granted summary judgment in favor of Dr. Goates, concluding that Debry had not established there was a therapist-patient relationship, or in the alternative, that Debry had waived her privilege by putting her mental state at issue in the divorce. Debry now appeals.

## ISSUE AND STANDARD OF REVIEW

■ ¶ 13 Debry asserts the trial court erred in determining there was no therapist-patient relationship, or in the alternative, that the privilege was waived, and thus inappropriately granted summary judgment in favor of Dr. Goates. Summary judgment is warranted only when there is no dispute of material facts and the moving party is enti-

---

1. The documents were signed on May 26, 1994, but it is not clear when they were filed with the court. Opposing counsel stamped them as received by mail on May 31. There is no date stamp for the court filing. At the earliest, then, the documents were filed on May 26, but it could have been later.

tled to judgment as a matter of law. *See Scott v. Majors*, 1999 UT App 139, ¶ 8, 980 P.2d 214. We review summary judgment for correctness, giving no deference to the trial court's legal conclusions. *See id.* Moreover, "[t]he existence of a privilege is a question of law for the court, which we review for correctness." *State v. Anderson*, 972 P.2d 86, 88 (Utah Ct.App.1998) (citation omitted).

## ANALYSIS

### I. Therapist–Patient Relationship

¶ 14 Debry argues that Dr. Goates breached her therapist-patient privilege when he gave an affidavit disclosing his opinion regarding Debry's mental health without her consent. The therapist-patient privilege is defined by the Utah Rules of Evidence. *See* Utah R. Evid. 506; *see also* Utah Code Ann. § 58–60–113 (1998) (stating evidentiary privilege for mental health therapists is in accordance with Utah Rule of Evidence 506).

¶ 15 In interpreting rules, we use the general principles of statutory construction. *See State v. Robertson*, 932 P.2d 1219, 1228 (Utah 1997). Thus, we first look to the plain language of the rule. *See Loporto v. Hoegemann*, 1999 UT App 175, ¶ 5, 982 P.2d 586. Also, as with statutes, we view the rule as a whole rather than in a piecemeal fashion. *See Thiele v. Anderson*, 1999 UT App 056, ¶ 14, 975 P.2d 481.

¶ 16 The therapist-patient privilege belongs to the patient, *see* Utah R. Evid. 506(c) ("The privilege may be claimed by the patient."); *see also Middleton v. Beckett*, 960 P.2d 1213, 1216 (Colo.Ct.App.1998) (stating that "privilege is personal to the patient"), and the patient bears the burden of establishing the applicability of the privilege. *See id.*

¶ 17 To establish the privilege, Debry must show that she had a patient-therapist relationship with Dr. Goates: a relationship she subjectively denied in her deposition, but one that Dr. Goates admits.

¶ 18 Rule 506 defines "patient" as "a person who consults or is examined or interviewed by a physician or mental health therapist." Utah R. Evid. 506(a)(1). However, we read this definition together with Rule 506's general rule of privilege:

If the information *is communicated in confidence and for the purpose of diagnosing or treating the patient*, a patient has a privilege ... to refuse to disclose and to prevent any other person from disclosing (1) diagnoses made, treatment provided, or advice given, by a physician or mental health therapist, [and] (2) information obtained by examination of the patient....

Utah R. Evid. 506(b) (emphasis added). By reading the definition of "patient" in conjunction with the general rule of privilege, for the privilege to attach the consultation or examination must be for the purposes of receiving personal diagnosis or treatment from the doctor.

¶ 19 The objective facts before the trial court, viewed most favorably to Debry, particularly Dr. Goates's description of his relationship with Debry, establish a therapist-patient relationship. Dr. Goates saw Debry several times for treatment and prescribed drugs for her. However, in her deposition, Debry subjectively denied the existence of this type of therapist-patient relationship with Dr. Goates. On appeal, she now asserts that a "patient's" subjective perception is not controlling in determining whether a therapist-patient relationship exists, arguing that objective factors should be used to establish a professional relationship. She relies on *State v. Pitchford*, 10 Kan.App.2d 293, 697 P.2d 896, 900 (1985), to support the evaluation of objective factors in making such a determination.

¶ 20 In *Pitchford*, the police attempted to use blood alcohol test results against a motorist involved in an accident. *See id.* at 897. The motorist was taken to the hospital after the accident, but was combative during treatment. The physician ordered a blood alcohol test to assist him in determining the proper treatment and to find out why the motorist was so uncooperative. *See id.* The motorist asserted that the test was in the course of treatment, and therefore privileged. *See id.* at 898.

¶ 21 The court concluded that a physician-patient relationship was established even though the patient did not consider himself a patient at the time of treatment. *See id.* at 900. The court concluded that, even though the patient was unwilling, a therapeutic relationship was formed because treatment was the goal, and thus was within the scope of the physician-patient privilege: "Determining whether [a person is] a 'patient' does not turn on whether he voluntarily consulted a physician." *Id.* Instead, the "controlling fact" in such a determination is whether the encounter is "for the purposes of treatment." *Id.*

¶ 22 Although our facts are somewhat different, the policies behind the therapist-patient privilege mandate a similar result. Here, objective factors show that the relationship between Debry and Dr. Goates was indeed a therapeutic one, and thus within the scope of privilege. Although she was initially examined or interviewed by Dr. Goates in conjunction with a custody evaluation in her first divorce, she continued to see Dr. Goates in his professional capacity for treatment after that divorce. They had several meetings, he prescribed medications for her condition, and the goal was therapeutic treatment. Debry was thus a "patient" within the meaning of Rule 506 because she consulted with or was examined by a mental health therapist for the purposes of receiving treatment.

2. Initially, we must clarify the relationship between Rule 506, an evidentiary rule, and the statutory privilege provided in the Utah Code. *See* Utah Code Ann. § 78–24–8(4) (1996) (providing physician-patient privilege is waived only when patient puts condition at issue). Debry argues that the statutory provision is controlling. We disagree.

The Utah Rules of Evidence expressly supersede statutory privileges. *See* Utah R. Evid. 501. Rule 501 states that, excepting constitutional provisions, "no person shall have a privilege to withhold evidence except as provided by these or other rules adopted by the Utah Supreme Court or by existing statutory provisions not in conflict with them." *Id.* Statutory privileges not in conflict are retained, but when inconsistencies arise, the rules control. *See id.* The rules are promulgated under the constitutional authority of the Utah Supreme Court, and thus supersede inconsistent statutory provisions. *See State v. Robertson,* 932 P.2d 1219, 1230 (Utah 1997).

Furthermore, Rule 506 expressly supersedes the statutory privilege. Rule 506 "is intended to

¶ 23 In sum, Debry had a therapist-patient relationship with Dr. Goates. Thus, she is entitled to a general privilege under Rule 506 based on that relationship. However, Rule 506 contains exceptions to the general privilege. We now evaluate whether any of these exceptions apply.

## II. Waiver of or Limitation on the Privilege

¶ 24 Rule 506 defines the physician-patient and mental health therapist-patient privileges, but also delineates exceptions:[2]

> No privilege exists under this rule: As to a communication relevant to an issue of the physical, mental, or emotional condition of the patient *in any proceeding in which that condition is an element of any claim or defense,* or, after the patient's death, in any proceedings in which any party relies upon the condition as an element of the claim or defense.

Utah R. Evid. 506(d)(1) (emphasis added).[3] Debry asserts that this exception does not apply as it was her husband that first put the question of her mental health at issue. Goates argues that this exception applies when any party raises the mental condition of a patient in a proceeding. Based on a recent Utah Supreme Court case, we must agree with Goates

supersede Utah Code Ann. §§ 78–24–8(4) and 58–25a–8." Utah R. Evid. 506 Advisory Comm. Note. Thus, the statutory privilege has no further effect. Physician-patient and therapist-patient privileges are now exclusively controlled by Rule 506.

3. Comparing Rule 506 with its Florida equivalent shows the breadth of the language in Utah's Rule 506. Florida's therapist-patient privilege is similar to Rule 506 in that it lists not waivers of privilege but exceptions to privilege:

> There is no privilege under this section: For communications relevant to an issue of the mental or emotional condition of the patient in any proceeding *in which he relies* upon the condition as an element of his claim or defense or, after the patient's death, in any proceeding in which any party relies upon the condition as a claim or defense.

Florida Stat. Ann. ch. 90.503(4)(c) (West 1998) (emphasis added).

¶ 25 In *State v. Cardall*, 1999 UT 51, 982 P.2d 79, the supreme court noted the language of Rule 506 is broad enough to permit any party in a proceeding to raise the mental state of a patient. *See id.* at ¶ 29. The court concluded the exception from the privilege of those communications regarding a mental state relevant to an element of a defense entitled the defendant to examine the psychological records of the crime victim. *See id.* at ¶ 32. The defendant's defense was based on the victim's alleged propensity to lie; thus her "mental and emotional state [was] an important element of [his] defense." *Id.* at ¶ 31.

¶ 26 However, the court explained the limited nature of the exception: although this exception to the privilege is broad enough to let a nonpatient raise the patient's mental state as an issue in proceedings, access to medical records is still constrained. *See id.* at ¶ 30. A nonpatient "does not have the right to examine all of the confidential information or to search through [psychological] files without supervision." *Id.* (citing *Pennsylvania v. Ritchie*, 480 U.S. 39, 59, 107 S.Ct. 989, 1011, 94 L.Ed.2d 40 (1987)). Rather, a party must show with "reasonable certainty" that some evidence favorable to his or her claim exists. *Id.* If such a showing is made, then the party may request that the court review the otherwise confidential records "to determine if they contain material evidence." *Id.* If, after review, the court determines the records contain material evidence, the records should be exposed only to the extent necessary to present the evidence, thereby striking a balance between the important interests of physician-patient confidentiality and the pursuit of a claim or defense.

¶ 27 We conclude analogous protections must be applied to the exception in a situation such as this.[4] Based on the breadth of the "at issue" exception of Rule 506, Robert Debry could raise the mental state of Debry in the divorce proceedings. However, it does not necessarily follow that Dr. Goates's affidavit is thus exempted from the privilege. The record before us does not demonstrate that any safeguards were used to protect Debry's confidentiality. From all that appears, Dr. Goates voluntarily furnished an affidavit about his patient's mental condition to her adversary in divorce litigation. Dr. Goates gave his affidavit without a court order, without a subpoena, and without even notifying Debry. She had no opportunity to assert her privilege. No determination was made that Dr. Goates's affidavit was "material" to Mr. Debry's defense against Debry's support requests.[5]

¶ 28 We conclude that under these circumstances, a patient must at least be afforded the opportunity for protection. As part of a therapeutic relationship, a doctor or therapist has an obligation to protect the confidentiality of his patients that transcends any duty he has as a citizen to voluntarily provide information that might be relevant in pending litigation. Before disclosing confidential patient records or communications in

---

4. In a criminal context, such as *Cardall* and *Ritchie*, due process concerns limit the extent of an evidentiary privilege because a criminal defendant has a constitutional right to a fair trial. Privilege must give way to the discovery of exculpatory information, but, as noted, with some protections for confidentiality. Additionally, in both of these cases, state records were 'at issue,' with the state in sole control of the information.

Arguably, Rule 506 could be more narrowly construed in a civil context, when personal liberty is not at stake. However, the rule makes no such distinction, and neither did our supreme court in *Cardall*. Thus, we feel constrained to apply similar measures in this civil arena, though the need for the information may be less compelling.

5. It could be argued the affidavit was not material. The affidavit was attached in support of a motion for an independent examination of Debry. Under discovery rules, a party can request a court order for a psychological evaluation "for good cause shown." Utah R. Civ. P. 35(a). Debry's request for therapy support on its own would have supported an independent evaluation. Indeed, this is the implication of the trial court's ruling denying the motion for the exam. The trial court denied the motion on the condition that Debry remove her therapy support request. Had she renewed such a request, the court would have ordered an independent exam to help determine appropriate support amounts, if any. The provision for such evaluations provides an important method of determining mental state when at issue, without revealing prior therapeutic confidential communications and resulting diagnoses.

a subsequent litigation, a physician or therapist should notify the patient. Even if the communications may fall into this exception to the privilege, the patient has the right to be notified of the potential disclosure of confidential records. Such notice assures that the patient can pursue the appropriate procedural safeguards in court to avoid unnecessary disclosure. This is particularly important when it is not the patient raising the issue of her mental state in a subsequent proceeding.

¶ 29 Because no such showings were made in this case, we cannot conclude that, as a matter of law, Dr. Goates's affidavit was excepted from the privilege. Thus, we reverse the grant of summary judgment and remand for a determination of whether, under the facts of the disclosure, the privilege applied.

## CONCLUSION

¶ 30 In sum, we conclude that Debry did have a therapist-patient relationship with Dr. Goates. Thus, her confidential communications were initially within the scope of the therapist-patient privilege. Although her mental state was placed at issue in her divorce proceedings, thereby raising a possible exception to the privilege, the facts before the trial court on summary judgment do not establish as a matter of law that the exception to the privilege was established. Thus summary judgment was inappropriate. Accordingly, we reverse.

¶ 31 WE CONCUR: NORMAN H. JACKSON, Associate Presiding Judge and GREGORY K. ORME, Judge.