2008 UT 8

**Nicholas SORENSEN, Kevin Sorensen, and Pamela Sorensen, limited guardians and conservators of Nicholas Sorensen, Plaintiffs and Respondents.**

v.

**John P. BARBUTO, individually, and John P. Barbuto, M.D., P.C., dba Neurology in Focus, Defendants and Petitioners.**

No. 20060816.

Supreme Court of Utah.

Feb. 1, 2008.

L. Rich Humphreys, Karra J. Porter, Salt Lake City, for plaintiffs.

Dennis C. Ferguson, Salt Lake City, for defendants.

David C. Gessel, Salt Lake City, Merrill F. Nelson, R. Chet Loftis, Mark A. Brinton, Salt Lake City, Brent Gordon, Salt Lake City, for amici, UHA, Utah Hospitals and

Health Systems Ass'n, Utah Medical Ass'n, and Utah Trial Lawyers Ass'n.

DURHAM, Chief Justice:

## INTRODUCTION

¶ 1 This case comes before us on a writ of certiorari to the Utah Court of Appeals. We granted the writ of certiorari on two questions: (1) whether by filing a personal injury suit Nicholas Sorensen waived any duty of confidentiality encompassing ex parte communications between himself and Dr. John Barbuto in that suit; and (2) whether the court of appeals erred in construing the scope of the privilege set forth in rule 506 of the Utah Rules of Evidence and/or the scope of the exception to the privilege set forth in subpart (d)(1). Dr. Barbuto argues that the court of appeals erred in establishing a common law fiduciary-like duty of confidentiality that is beyond the normal scope of the privilege arising from the physician-patient relationship. We affirm the court of appeals' decision and remand the case to the district court for further proceedings.

## BACKGROUND

¶ 2 In July 1999, Sorensen suffered brain and back injuries as a passenger in a single-car accident. Dr. Barbuto treated Sorensen for seizures and head injuries. After approximately eighteen months, Sorensen was forced to change physicians when his medical insurance plan dropped Dr. Barbuto from its list of approved providers. Sorensen continued to receive medical care from another physician.

¶ 3 Sorensen subsequently filed a personal injury action, seeking compensation from the driver's insurer. Sorensen's medical records were submitted into evidence and the insurer's defense counsel subpoenaed Dr. Barbuto to testify during the May 2003 trial. The trial was postponed until October. The course of events during this five-month delay gives rise to Sorensen's claims against Dr. Barbuto. During that time, Dr. Barbuto participated in ex parte communications with the defense team and agreed to testify as an expert on behalf of the insurance company against Sorensen.

¶ 4 The ex parte communications between Dr. Barbuto and the insurer's defense counsel remained unknown to Sorensen until just prior to trial. After a motion in limine was filed, the trial court excluded Dr. Barbuto's testimony because the insurer's counsel had not designated him as an expert in a timely fashion. Sorensen prevailed in the personal injury action.

¶ 5 In 2004 Sorensen filed this action against Dr. Barbuto claiming that, as his former physician, Dr. Barbuto breached a covenant of good faith and fair dealing, which encompasses a physician's duty of confidentiality, as well as other tort causes of action. Dr. Barbuto filed a motion to dismiss under rule 12(b)(6) of the Utah Rules of Civil Procedure. The trial court granted the motion. The Utah Court of Appeals affirmed in part and reversed in part, holding that (1) the dismissal of the contract claim was appropriate since breach of confidentiality is actionable in tort; (2) ex parte communications between opposing counsel and Dr. Barbuto amounted to a breach of Dr. Barbuto's fiduciary duty of confidentiality, which gave rise to a negligence claim; (3) Sorensen's invasion of privacy claim failed because disclosure to defense counsel did not equate to a public disclosure; and (4) Sorensen could maintain a claim of intentional infliction of emotional distress against Dr. Barbuto.

## ANALYSIS

¶ 6 Dr. Barbuto argues that Sorensen authorized the ex parte communications between Dr. Barbuto and defense counsel by placing his physical condition at issue in the personal injury suit. Dr. Barbuto also argues that the court of appeals improperly altered the nature of the physician-patient relationship by imposing a fiduciary duty of confidentiality on him. The primary issue presented by this appeal is whether Utah recognizes a duty of confidentiality that is more extensive than the judicial privilege afforded under the Utah Rules of Evidence and whether that duty precludes the type of

ex parte communications alleged by Sorensen.

## I. RULE 506 OF THE UTAH RULES OF EVIDENCE LIMITS THE SCOPE OF DISCLOSURE BY A TREATING PHYSICIAN TO DISCLOSURE AS PART OF COURT PROCEEDINGS AND TO INFORMATION RELEVANT TO A CLAIM OR DEFENSE

¶ 7 Dr. Barbuto argues that the physician's duty of care was not breached because his disclosures to defense counsel were permitted under Utah Code section 78–24–8(4) (2002). Dr. Barbuto claims that section 78–24–8(4), not rule 506 of the Utah Rules of Evidence, controls privilege in the physician-patient relationship. Section 78–24–8(4) protects information a physician obtains while treating a patient from disclosure as part of court proceedings. A physician is permitted to "provide information, interviews, reports, records, statements, memoranda, or other data relating to the patient's medical condition" when a patient places a medical condition at issue in a court proceeding. *Id.*

¶ 8 This court has previously held that "rule 506 supersedes section 78–25–8(4), and . . . rule 506 applies to both criminal and civil proceedings." *Burns v. Boyden,* 2006 UT 14, ¶ 12 & n. 2, 133 P.3d 370 (citing Utah Rule of Evidence 506 advisory committee note (stating that rule 506 is intended to supersede statutory privilege)); *see also Debry v. Goates,* 2000 UT App 58, ¶ 24 n. 2, 999 P.2d 582 (holding that the scope of the physician-patient privilege is exclusively controlled by rule 506).

■ ¶ 9 Rule 506 privilege enables a patient to prevent a physician "from disclosing diagnoses made, treatment provided, or advice given, by a physician." Utah R. Evid. 506(b). However, the scope of this privilege is not absolute. *See Burns,* 2006 UT 14, ¶ 15, 133 P.3d 370. The rules of evidence "govern proceedings in the courts of this State," Utah R. Evid. 101, and they specifically exempt "a communication relevant to an issue of the physical, mental, or emotional condition of the patient in any proceeding in which that condition is an element of any claim or defense." *Id.* 506(d)(1).

¶ 10 Furthermore, a plain reading of rule 506(d)(1) clearly limits the breadth of the exception to the privilege to the confines of the court proceedings. Further, a waiver under rule 506(d)(1) does not mean that the patient has consented to the disclosure of his entire medical history. Rule 506 is only broad enough to allow the disclosure of information relevant to an element of any claim or defense. Therefore, rule 506(d)(1) is a limited waiver of privilege, confined to court proceedings, and restricted to the treatment related to the condition at issue.

## II. A PHYSICIAN'S HEALTHCARE FIDUCIARY DUTY OF CONFIDENTIALITY CONTROLS THE RELEASE OF MEDICAL INFORMATION EVEN WHEN PRIVILEGE HAS BEEN WAIVED UNDER RULE 506(d)(1)

■ ¶ 11 Dr. Barbuto argues the court of appeals' decision below creates a new fiduciary duty in physicians that is beyond the scope of rule 506 privilege. We note at the outset that a physician's duty of confidentiality is different and distinct from the physician-patient testimonial privilege in rule 506. These two zones of protection for patient records and disclosures are not coextensive, even though they often overlap. Rule 506 governs the dissemination of information as part of a court proceeding. The duty of confidentiality is not similarly restricted and serves a broader purpose.

¶ 12 A physician's duty of confidentiality encompasses the broad principle that prohibits a physician from disclosing information received through the physician-patient relationship. The duty is rooted in the ethical underpinnings of this relationship and serves to prevent a physician from disclosing sensitive medical information to any third party. It arises from the understanding that good medical care requires a patient's trust and confidence that disclosures to physicians will be used solely for the patient's welfare and that a patient's privacy with regard to those disclosures will be respected and protected.

■ ¶ 13 Rule 506's privilege operates to some extent as a subsection of a physician's

duty of confidentiality. While rule 506(d)(1) provides a judicial exception to privilege that permits disclosure of confidential information that has been placed at issue in litigation, it does not thereby vitiate the entirety of the physician's duty of confidentiality. This duty remains intact in litigation and continues to prevent a physician from disclosing confidential information to a patient's friends, family, employers, or any other third party.

¶ 14 Contrary to Dr. Barbuto's argument, the court of appeals did not create a new duty for physicians to follow. In *Debry v. Goates,* the court of appeals clearly recognized a duty of confidentiality that extends beyond rule 506's evidentiary privilege. 2000 UT App 58, ¶ 28, 999 P.2d 582. Specifically, *Debry* states, "As part of a therapeutic relationship, a doctor or therapist has an obligation to protect the confidentiality of his patients that transcends any duty he has as a citizen to voluntarily provide information that might be relevant in pending litigation." *Id.*

¶ 15 What was new about the court of appeals' decision in this case was that the court employed the term "fiduciary" in discussing a physician's duty of confidentiality. *Sorensen v. Barbuto,* 2006 UT App 340, ¶ 16, 143 P.3d 295 ("[E]x parte communication between a physician and opposing counsel constitutes a breach of the physician's fiduciary duty of confidentiality."). Applying this term to the healthcare industry is far from revolutionary. Courts have long characterized the duty physicians have to their patients as fiduciary. *See, e.g., Doe v. Cmty. Health Plan–Kaiser Corp.,* 268 A.D.2d 183, 709 N.Y.S.2d 215, 217 (2000) ("[A]lthough plaintiff employs the term negligence in the first cause of action, its gravaman [sic] is fundamentally the breach of the fiduciary duty of confidentiality."); *Alexander v. Knight,* 197 Pa.Super. 79, 177 A.2d 142, 146 (1962) ("We are of the opinion that members of a profession, especially the medical profession, stand in a confidential or fiduciary capacity as to their patients."); *Morris v. Consolidation Coal Co.,* 191 W.Va. 426, 446 S.E.2d 648, 654 (1994) ("[W]e hold that a fiduciary relationship exists between a treating physician and a claimant . . . ."); *see also Fairfax Hosp. v. Curtis,* 254 Va. 437, 492 S.E.2d 642, 644 (1997) ("[A] health care provider owes a duty of reasonable care to the patient. Included with that duty is the health care provider's obligation to preserve the confidentiality of information about the patient. . . .").

¶ 16 Dr. Barbuto argues the language used by the court of appeals imposes a *general* fiduciary duty that requires a physician to not only provide the appropriate medical treatment, but also to "act only in the best interests, particularly the financial interests of the patient." Additionally, Dr. Barbuto argues the term fiduciary "imposes a duty on a physician that favors testimony favorable to his patient . . . over medically objective truth." We disagree. The healthcare fiduciary duty of confidentiality articulated in *Debry* and restated by the court of appeals in this case does not impose such expansive duties on physicians. This duty is not one of a trust fiduciary or economic fiduciary. Rather, the duty required by *Debry* is one of confidentiality with an additional focus on notifying the patient prior to disclosure. "Before disclosing confidential records or communications in a subsequent litigation, a physician or therapist should notify the patient. Even if the communications may fall into [rule 506(d)(1)'s] exception to privilege, the patient has the right to be notified of the potential disclosure of confidential records." *Debry,* 2000 UT App 58, ¶ 28, 999 P.2d 582.

¶ 17 Accordingly, Utah law recognizes a healthcare fiduciary duty of confidentiality. Rule 506 undoubtedly allows a treating physician to disclose confidential information as part of a court proceeding, but a waiver of that privilege is not a waiver of the healthcare fiduciary duty of confidentiality. This duty of confidentiality continues to control to whom and what information the physician may release even when the evidentiary privilege has been waived.

## III. THE HEALTHCARE FIDUCIARY DUTY OF CONFIDENTIALITY PREVENTS A TREATING PHYSICIAN FROM ENGAGING IN EX PARTE COMMUNICATIONS WITH A PATIENT'S ADVERSARY

¶ 18 Dr. Barbuto argues that his ex parte communications with defense counsel did not

amount to a breach of his healthcare fiduciary duty of confidentiality because the information was disclosed as part of discovery in litigation. Our review of relevant case law shows a split in courts as to whether ex parte communications between a treating physician and defense counsel are a permitted form of discovery.

¶ 19 Courts holding that a treating physician may participate in ex parte communications with defense counsel have permitted this type of informal discovery based upon factors such as reduced litigation costs, ease of setting interviews as opposed to depositions, increased candor in interviews, ability to cheaply and quickly eliminate nonessential witnesses, and the potential to settle the case early. *See Doe v. Eli Lilly & Co.*, 99 F.R.D. 126, 128 (D.D.C.1983) (stating that "there are entirely respectable reasons for conducting discovery by [ex parte] interview," including reducing costs, averting scheduling conflicts, promoting candor by witnesses, and eliminating nonessential witnesses); *Trans–World Invs. v. Drobny*, 554 P.2d 1148, 1151–52 (Alaska 1976) (holding there are no legal impediments to ex parte communications and such private conferences should be encouraged since they reduce litigation costs and expend fewer court resources by facilitating early settlement of cases); *Green v. Bloodsworth*, 501 A.2d 1257, 1259 (Del.Super.Ct.1985) (stating that physicians are available and may refuse ex parte questioning like any other witness once the patient has waived the physician-patient privilege); *Stempler v. Speidell*, 100 N.J. 368, 495 A.2d 857, 864 (1985) (stating that ex parte interviews are an acceptable means of trial preparation and should be encouraged because they reduce the cost and time of litigation).

¶ 20 Other courts rejected these policy reasons and have prohibited ex parte communications between defense counsel and a plaintiff's treating physician. *See Perkins v. United States*, 877 F.Supp. 330, 333–34 (E.D.Tex.1995) ("[I]n a personal injury suit a defense lawyer may not contact ex parte a plaintiff's non-party treating physician without the plaintiff's authorization." (emphasis omitted)); *Neal v. Boulder*, 142 F.R.D. 325, 328 (D.Colo.1992) ("Plaintiffs may ultimately choose to provide a release of medical records, but they may also choose to specifically preclude ex parte communications." (emphasis omitted)); *Duquette v. Superior Court*, 161 Ariz. 269, 778 P.2d 634, 639 (Ct.App. 1989) ("[W]e do not believe that such practical concerns as cost efficiency and ease of scheduling are of paramount concern to a proper resolution of the issue."); *Petrillo v. Syntex Labs., Inc.*, 148 Ill.App.3d 581, 102 Ill.Dec. 172, 499 N.E.2d 952, 961 (1986) ("[W]e also believe that the patient, because of the fiduciary relationship existing between him and his physician, should have the right to expect that his physician will provide the medical information sought by the patient's adversary *pursuant only to court authorized methods of discovery*."); *Crist v. Moffatt*, 326 N.C. 326, 389 S.E.2d 41, 47 (1990) ("[C]onsiderations of patient privacy, the confidential relationship between doctor and patient, the adequacy of formal discovery devices, and the untenable position in which ex parte contacts place the nonparty treating physician supersede defendant's interests in a less expensive and more convenient method of discovery." (emphasis omitted)).

¶ 21 We agree with the courts that have prohibited ex parte communications between a plaintiff's treating physician and defense counsel for two primary reasons. First, not doing so undermines patient expectations of physician-patient confidentiality. Second, appropriately limiting the scope of a treating physician's disclosure requires judicial monitoring that cannot occur in the context of ex parte communications.

¶ 22 The healthcare fiduciary duty of confidentiality exists to foster appropriate medical treatment of patients by assuring patients that their honest and complete disclosures of symptoms and medical history to treating physicians will be kept confidential. Allowing ex parte communications between a treating physician and opposing parties in litigation would undermine the physician-patient relationship because patients would lack adequate assurance that their candid responses to questions important to determining their appropriate medical treatment would remain confidential. The Illinois Court of Appeals prohibited this type of ex

parte communications on this very ground. *Petrillo*, 102 Ill.Dec. 172, 499 N.E.2d at 959 ("[W]hen a physician and defense counsel engage in an ex parte conference regarding the confidences of the patient ... the confidentiality which once existed between the patient and his physician is completely disregarded and the sanctity of the relationship existing between a patient and his physician is thereby destroyed."); *see also Duquette* 778 P.2d at 640 (ex parte communications of this type would be "destructive of both the confidential and fiduciary natures of the physician-patient relationship"). We agree that ex parte communications between a treating physician and counsel opposing the patient should be prohibited because such communications are destructive to the relationship that exists between a physician and a patient.

¶ 23 Next, we are of the opinion that permitting ex parte communications between a treating physician and an opposing counsel would make it impossible for a patient or a court to appropriately monitor the scope of the physician's disclosures. As stated above, a patient's waiver of privilege does not mean that everything disclosed to or learned by a physician in the course of treating a patient is subject to disclosure once a patient's physical or mental condition is at issue in litigation. In this respect, we agree with the following logic of the Iowa Supreme Court:

> We are concerned ... with the difficulty of determining whether a particular piece of information is relevant to the claim being litigated. Placing the burden of determining relevancy on an attorney, who does not know the nature of the confidential disclosure about to be elicited, is risky. Asking the physician, untrained in the law, to assume this burden is a greater gamble and is unfair to the physician. We believe this determination is better made in a setting in which counsel for each party is present and the court is available to settle disputes.

*Roosevelt Hotel Ltd. v. Sweeney*, 394 N.W.2d 353, 357 (Iowa 1986). A physician is likely not trained to know what information can be disclosed as covered by a patient's rule 506(d)(1) waiver of privilege and what information remains protected by the healthcare fiduciary duty of confidentiality. Counsel in a position adverse to the patient is an equally unreliable advocate for the patient's interest in this situation. Thus, we believe it is necessary to prohibit ex parte communications between a treating physician and opposing counsel in litigation with the physician's patient.

¶ 24 Given our analysis and holding above, it is important to emphasize the fact that opposing counsel is not foreclosed from obtaining relevant medical information from a treating physician. Such information may still be obtained through traditional forms of formal discovery. Our holding should not be construed as putting the patient in control of what medical information is made available to opposing counsel and what is kept private. Making this information available through formal methods of discovery strikes a balance between enabling the patient to protect confidential medical information that has no relevance to the civil action and providing the patient's adversary access to information that is relevant to a condition placed at issue in the case.[1]

¶ 25 In conclusion, we affirm the court of appeals' holding that Dr. Barbuto's ex parte communications with opposing counsel in Sorensen's personal injury action was a violation of Dr. Barbuto's healthcare fiduciary duty of confidentiality.

---

**1.** A physician's ability to act as an expert for a patient's antagonist in litigation is similarly limited. A treating physician may still be called as a factual witness by a party opposing a patient in litigation. As part of that testimony, physicians are permitted to provide opinions regarding the medical information that has been released through rule 506(d)(1). *Torres v. Superior Court*, 221 Cal.App.3d 181, 186, 270 Cal.Rptr. 401 (1990) (holding that a treating physician may testify on behalf of the defense "within the pa-rameters of the complaint"); *Carson v. Fine*, 123 Wash.2d 206, 867 P.2d 610, 618–19 (1994) ("[W]e do not see the fiduciary nature of the physician-patient relationship as justification for restricting access to a treating physician's opinions."). Naturally, this limitation is not imposed on a patient since there is nothing that would restrict a patient from engaging in ex parte communications with a current or former treating physician.

## IV. UTAH STATE BAR ADVISORY OPINION NO. 99–03 IS VACATED

¶ 26 Dr. Barbuto argues that physicians should be immune from liability because ex parte communications of this type are expressly permitted under Utah State Bar Advisory Opinion No. 99–03, which reads: "No ethical rule prohibits ex parte contact with plaintiff's treating physician when plaintiff's physical condition is at issue." Utah State Bar Ethics Advisory Opinion Committee, Op. 99–03 (1999). The ultimate authority on professional conduct lies with the Utah Supreme Court. *See* Utah Const. art. VIII, § 4; *see also Burke v. Lewis,* 2005 UT 44, ¶ 33 n. 6, 122 P.3d 533 (stating that the Utah Supreme Court is not bound by the Ethics Advisory Committee's opinions).

¶ 27 Because it would be illogical to permit attorneys to lead physicians into breaching their duty of confidentiality, we vacate Utah State Bar Ethics Advisory Opinion Committee Opinion 99–03 and instruct lawyers to confine their contact and communications with a physician or therapist who treated their adversary to formal discovery methods.

¶ 28 The prior effectiveness of this advisory opinion, however, does not shelter Dr. Barbuto from liability because, as the court of appeals correctly held, Opinion 99–03 governed the conduct of attorneys, not physicians. Additionally, at the time the ex parte communications took place in this case, Utah law under *Debry* already required physicians to provide notification prior to providing medical information as part of a judicial proceeding.

## CONCLUSION

¶ 29 Ex parte communications between a former or current treating physician and counsel opposing a patient in court are prohibited. The information held by a physician that is relevant to a judicial proceeding may be obtained only through traditional methods of discovery. Moreover, a physician must adhere to the healthcare fiduciary duty of confidentiality even when the patient has waived his rule 506 privilege by placing his physical or mental condition at issue in a judicial proceeding. Accordingly, we affirm the court of appeals' decision and remand the case to the district court for further proceedings.

¶ 30 Associate Chief Justice WILKINS, Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Chief Justice DURHAM'S opinion.