2008 UT App 102

**STATE of Utah, Plaintiff and Appellee,**

v.

**Nathaniel Thomas YOUNT, Defendant and Appellant.**

**No. 20060901–CA.**

Court of Appeals of Utah.

March 27, 2008.

Edward K. Brass, Salt Lake City, for Appellant.

Mark L. Shurtleff, Atty. Gen., and Jeffrey S. Gray, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before Judges BENCH, BILLINGS, and ORME.

## OPINION

BENCH, Judge:

¶1 Defendant Nathaniel Thomas Yount appeals the trial court's denial of his motion to suppress evidence obtained through a subpoena and subpoena duces tecum served on his medical provider. Defendant asserts that the trial court correctly determined that the State's failure to give him notice of the subpoena rendered it an unreasonable search and seizure of his medical records. Defendant claims, however, that the trial court erred in concluding that the inevitable discovery doctrine alleviated the need to suppress the evidence. The State argues that no unreasonable search and seizure occurred because the prosecutor submitted an affidavit of probable cause and received judicial authorization to issue the subpoena, thus making the subpoena akin to a search warrant for which no notice to Defendant was required. We agree with Defendant and reverse the denial of Defendant's motion to suppress.

## BACKGROUND

¶ 2 On June 22, 2005, Defendant was driving a vehicle with two passengers when he failed to make a sharp turn. The vehicle rolled down a ravine and came to a stop against some trees. Deputy Travys Stoddard (the Deputy) of the Beaver County Sheriff's Office arrived at the scene of the rollover accident and found Defendant and one passenger pinned underneath the vehicle. The Deputy noticed the smell of alcohol on Defendant and also observed several open and full beer containers, as well as three kinds of pills and some marijuana, in and around the car. The other passenger informed the Deputy that Defendant had been the driver, that Defendant had consumed alcohol, and that Defendant had been traveling at approximately forty-eight miles per hour just prior to the accident.

¶ 3 Defendant was taken from the scene of the accident to Beaver Valley Hospital (the Hospital) for treatment of his injuries. At the Hospital, Defendant refused a blood draw requested by a different deputy from the Beaver County Sheriff's Office. As part of Defendant's subsequent medical treatment, the Hospital conducted a blood test.

¶ 4 On June 23, 2005, a prosecutor from the Beaver County Attorney's Office filed formal charges against Defendant, in the form of an Information, and submitted to the court an Affidavit of Probable Cause. The prosecutor sought a warrant for Defendant's arrest and a court order to subpoena both Defendant's medical records relating to the accident and any blood drawn following the accident. That same day Defendant was arrested and charged with several offenses.

¶ 5 Also on June 23, 2005, the court entered an Order Authorizing the Issuance of a Subpoena and Subpoena Duces Tecum (the Order). The Order stated "that the State of Utah may prepare a Subpoena Duces Tecum to obtain the medical records of [Defendant] and a Subpoena to obtain any blood samples that the Beaver Valley Hospital has in its possession pursuant to ... Defendant's accident." The Order made no reference to the procedure by which the prosecutor should issue the subpoenas, nor did it reference any statute that authorized the subpoena.

¶ 6 The next day, June 24, 2005, the prosecutor prepared and issued a subpoena to the Hospital requesting the surrender of blood samples taken from Defendant. The court clerk issued a subpoena duces tecum to the Hospital directing that Defendant's medical records relating to the accident be sent to the prosecutor. Defendant was not notified of the request for the subpoenas, nor was Defendant notified that the subpoenas had been issued or served on the Hospital. Only after the Hospital complied with the subpoenas and produced Defendant's medical records did Defendant learn that the subpoenas had been sent. Defendant subsequently filed a motion to suppress all evidence obtained through the subpoenas and to quash the subpoenas pursuant to rule 45(b)(1)(A) of the Utah Rules of Civil Procedure.

¶ 7 In response to Defendant's motion, the trial court found that "the Prosecutor did not provide ... Defendant with prior notice of the commanded production of documents" and determined that "the obtaining of those documents constitute[d] an unreasonable search and seizure of Defendant's medical records." However, the trial court declined to suppress the evidence obtained through the subpoenas because it found that an exception to the exclusionary rule—the inevitable discovery doctrine—applied. The court reasoned that the doctrine applied because "[t]he Prosecutor would have been able to obtain Defendant's medical records ... despite any claimed privilege [relating to the records] ... if the Prosecutor had provided Defendant advance notice of the subpoena and otherwise complied with [r]ule 45." The court noted that the physician-patient privilege, which would ordinarily prevent disclosure of such medical records, would be waived given that Defendant's physical condition was an element of the State's claims against him. Thus, the court concluded that "[t]he only harm in this instance is that the Prosecutor did not provide ... Defendant notice before the Prosecutor obtained the Subpoena which he could and would have obtained even if notice had been given."

¶ 8 Following the court's ruling on his motion to suppress, Defendant entered a condi-

tional no contest plea to the crime of driving under the influence of drugs, a third degree felony, *see* Utah Code Ann. § 41–6a–503(2) (Supp.2007), expressly preserving his right to appeal from the adverse ruling. This appeal followed.

## ISSUES AND STANDARDS OF REVIEW

¶ 9 Defendant argues that the State violated his rights and conducted an unreasonable search when it failed to notify him of subpoenas it issued for his medical records and that the inevitable discovery doctrine is not a valid basis for the trial court's refusal to exclude evidence obtained in violation of his rights. The State argues that this court should affirm the admissibility of Defendant's medical records on other grounds. Specifically, the State urges this court to create a separate category of subpoenas for which notice to opposing parties is not required—subpoenas issued in lieu of a search warrant—based on the language of Utah Code section 77–23–203.

¶ 10 "Ordinarily, we review the factual findings underlying a trial court's decision to grant or deny a motion to suppress evidence under a clearly-erroneous standard, and we review the trial court's legal conclusions for correctness." *State v. Curry*, 2006 UT App 390, ¶ 5, 147 P.3d 483 (internal quotation marks omitted). In particular, "[w]e review for correctness the trial court's conclusion of law that [a party] failed to follow the proper procedures for subpoenaing documents." *State v. Gonzales*, 2005 UT 72, ¶ 25, 125 P.3d 878. We also "review questions of statutory interpretation for correctness, affording no deference to the district court's legal conclusions." *State v. Gallegos*, 2007 UT 81, ¶ 8, 171 P.3d 426.

## ANALYSIS

### I. Requirements for Subpoenaing a Criminal Defendant's Medical Records

#### A. Notification Requirements

¶ 11 Relying on *State v. Gonzales*, 2005 UT 72, 125 P.3d 878, Defendant asserts that the State was required to give him notice of the subpoenas issued to the Hospital for his potentially privileged medical records. In *Gonzales*, the Utah Supreme Court held "that [civil] rule 45(b)(1)(A)'s notification requirement applies to criminal matters where privileged information is at stake." *Id.* ¶ 41. In so holding, the supreme court noted that although "rule [14 of the Utah Rules of Criminal Procedure] does not specifically require a party seeking a subpoena to notify anyone of his intention, . . . . [t]he Utah Rules of Criminal Procedure are subject to some of the requirements of the Utah Rules of Civil Procedure." *Id.* ¶¶ 26–27. Rule 81(e) of the Utah Rules of Civil Procedure states that " '[t]hese rules of [civil] procedure shall also govern in any aspect of criminal proceedings where there is no other applicable statute or rule.' " *Id.* ¶ 27 (alterations in original) (quoting Utah R. Civ. P. 81(e)). In particular, "rule 45(b) [of the Utah Rules of Civil Procedure] requires '[p]rior notice of any commanded production or inspection of documents . . . before trial shall be served on each party in the manner prescribed by [r]ule 5(b).' " *Id.* (omission and second alteration in original) (quoting Utah R. Civ. P. 45(b)).

¶ 12 In reaching its holding in *Gonzales*, the supreme court explained that the language of the Utah Rules of Criminal Procedure and due process policy considerations support "the right of an opposing party to be informed of subpoenas for documents." *Id.* ¶ 32. The supreme court first noted "that the text of rule 14(b) [of the Utah Rules of Criminal Procedure] clearly signals that some notice to adverse parties of the issuance of a subpoena is contemplated" given that the rule "expressly authorizes trial courts to quash or modify unreasonable subpoenas." *Id.* ¶ 31. Thus, the rule "expects those parties affected by unreasonable compliance to seek relief from the court." *Id.* "Of course," the supreme court reasoned, "no application for an order to quash or modify could be made by an adversely affected party who received no notice of the subpoena." *Id.*

¶ 13 Furthermore, due process concerns arise where no notice is given to the party whose confidential or privileged records are subpoenaed. The supreme court

observed that " '[t]he fundamental requisite of due process of law is the opportunity to be heard, a right which has little reality or worth unless one is informed that the matter is pending and one can choose for himself whether to contest.' " *Id.* ¶ 32 (quoting *Worrall v. Ogden City Fire Dep't*, 616 P.2d 598, 601 (Utah 1980)). When a party's "confidential records are reviewed before [ ]he even knows they are subpoenaed, [ ]he cannot choose to protect them." *Id.* ¶ 33. Thus, "[t]he only way to prevent this is to ensure that the party receives notification that a subpoena has been issued." *Id.*

■ ¶ 14 In this case, the medical records sought by the prosecution may be protected by the physician-patient privilege outlined in rule 506 of the Utah Rules of Evidence. *See* Utah R. Evid. 506. This privilege "belongs to the patient," *Debry v. Goates*, 2000 UT App 58, ¶ 16, 999 P.2d 582, and it "enables a patient to prevent a physician 'from disclosing diagnoses made, treatment provided, or advice given, by a physician,' " *Sorensen v. Barbuto*, 2008 UT 8, ¶ 9, 596 Utah Adv. Rep. 49, 177 P.3d 614 (quoting Utah R. Evid. 506(b)). The privilege "applies regardless of the 'stage' of the proceedings," and thus, it "applies [even] in a criminal investigation." *Burns v. Boyden*, 2006 UT 14, ¶ 13, 133 P.3d 370. Certain exceptions in rule 506 create "a limited waiver" of this privilege, *Sorensen*, 2008 UT 8, ¶ 10, 177 P.3d 614, such as "where the patient's condition is an element of a claim or defense," *Burns*, 2006 UT 14, ¶ 15, 133 P.3d 370; *see also* Utah R. Evid. 506(d)(1) ("No privilege exists ... [as] to a communication relevant to an issue of the physical ... condition of the patient in any proceeding in which that condition is an element of any claim....").

■ ¶ 15 However, Defendant's right to notice of the subpoenas does not change even where the records allegedly contain communications that qualify as an exception to the physician-patient privilege. Utah courts have determined that " '[e]ven if the communications may fall into [rule 506(d)(1)'s] ex-

ception to [the] privilege, the patient has the right to be notified of the potential disclosure of confidential records.' " *Sorensen*, 2008 UT 8, ¶ 16, 177 P.3d 614 (quoting *Debry*, 2000 UT App 58, ¶ 28, 999 P.2d 582). This notification is required to provide the patient with an "opportunity to assert [the] privilege" and to "assure[ ] that the patient can pursue the appropriate procedural safeguards in court to avoid unnecessary disclosure." *Debry*, 2000 UT App 58, ¶¶ 27–28, 999 P.2d 582.

■ ¶ 16 Because Defendant did not receive notice of the subpoenas issued to the Hospital, he was denied an opportunity to assert his potential privilege or to otherwise pursue procedural safeguards in court to avoid unnecessary disclosure. Accordingly, we conclude that the trial court correctly determined that the State's failure to notify Defendant of the subpoenas for his medical records was a violation of his rights and rendered the subpoenas invalid.

### B. Exception to Notification Under Section 77–23–203.

¶ 17 Based on language in Utah Code section 77–23–203, the State urges us to create a separate category of subpoenas for which no notice to opposing parties is required and to affirm the trial court's denial of Defendant's motion to suppress. Section 77–23–203(2) addresses the conditions under which a search warrant may be issued to seize evidence of illegal conduct that is in the possession of innocent third parties. *See* Utah Code Ann. § 77–23–203(2) (2003) (repealed 2007).[1] This section allows a search warrant to be issued to obtain that evidence from the third party if a magistrate finds "that the evidence sought to be seized cannot be obtained by subpoena[ ] or that such evidence would be concealed, destroyed, damaged, or altered if sought by subpoena." *Id.* Where this finding is made, a magistrate must then tailor the search warrant to "reasonably afford protection of ... [certain] interests of the [third party] in possession of such evidence." *Id.*

---

1. The language from Utah Code section 77–23–203 was subsequently incorporated into rule 40(c) of the Utah Rules of Criminal Procedure.

*Compare* Utah Code Ann. § 77–23–203 (2003) (repealed 2007), *with* Utah R.Crim. P. 40(c).

¶ 18 Contrary to the State's assertion, this statute does not create a separate category of subpoenas—such as a subpoena in lieu of a warrant—that are not subject to the same notification requirements as ordinary subpoenas issued by a court clerk or prosecuting attorney. Rather, the statute sets forth the procedural requirements for obtaining a search warrant for evidence in the possession of third parties, which includes a required finding that a subpoena would not be a viable means of procuring that evidence. The statute is silent as to any particular procedural requirements the State must follow where that evidence can be obtained through a subpoena. Thus, the plain language of the statute does not create a different category of subpoenas, nor does it excuse the State for failing to give notice to a criminal defendant when the State subpoenas third parties possessing evidence of the defendant's alleged illegal conduct.

¶ 19 Importantly, elsewhere in the Utah Code, the legislature has explicitly provided a mechanism whereby a prosecutor may receive judicial authorization to issue subpoenas without notifying the target of the criminal investigation—the potential defendant—of the issuance. The Subpoena Powers Act, *see* Utah Code Ann. § 77–22–1 to –5 (2003), was enacted "to grant subpoena powers in [the] aid of criminal investigations and to provide a method of keeping information gained from investigations secret," *id.* § 77–22–1. "Upon a showing of good cause and the approval of the district court, the Subpoena Powers Act permits [prosecuting] attorney[s] ... to conduct a criminal investigation." *Gutierrez v. Medley*, 972 P.2d 913, 915 (Utah 1998) (citing Utah Code Ann. § 77–22–2(1)(a) (1995)). Upon an additional showing by a prosecutor that publicly releasing infor-

mation regarding the substance of evidence obtained in a criminal investigation may "pose a threat of harm to a person or otherwise impede the investigation," Utah Code Ann. § 77–22–2(6)(a)(i) (2003), a court may order, among other things, that the "occurrence of ... [the] subpoenaing of evidence ... be kept secret," *id.* § 77–22–2(6)(a)(ii)(B).

¶ 20 We therefore decline the invitation to create yet another category of subpoenas—subpoenas in lieu of warrants—for which notice to a criminal defendant is not required. The language of Utah Code section 77–23–203 does not support the creation of such a category of subpoenas, and we see no need to do so since secret subpoenas are already covered by another section of the Utah Code, the Subpoena Powers Act.[2]

## II. Exclusion of Evidence Obtained Through Illegal Subpoenas

¶ 21 Defendant argues that the State's use of illegal subpoenas to obtain evidence constituted an unreasonable search and seizure, that the evidence should be excluded, and that the inevitable discovery exception to the exclusionary rule does not apply in this case. The case *State v. Thompson*, 810 P.2d 415 (Utah 1991), is instructive in our analysis of these issues. In *Thompson*, the State began a criminal investigation of two defendants' financial activities and issued subpoenas duces tecum to certain banks for the defendants' financial records. *See id.* at 415–16. The defendants challenged the validity of the subpoenas, arguing that the subpoenas were illegal because they were "too broad." *Id.* at 416. The defendants also requested that all evidence the State obtained through the subpoenas be suppressed pursuant to the exclu-

**2.** We note that the State cannot use the Subpoena Powers Act to justify its failure to give notice to Defendant of the subpoenas it issued in this case because the State did not comply with the Subpoena Powers Act's requirements. In its request for an order authorizing the issuance of a subpoena for Defendant's medical records, the State did not make an assertion that publicly releasing information about the investigation or the subpoena to the Hospital would pose a threat of harm or otherwise impede the investigation. Although the State received an order from the trial court authorizing a subpoena for Defen-

dant's medical records, the trial court did not order that the subpoenaing of evidence be kept secret. Furthermore, the State issued the contested subpoenas *after* it filed the Information, which constituted formal criminal charges against Defendant, and thus it issued the subpoenas after the time period in which the powers granted in the Subpoena Powers Act may be used. *See Gutierrez v. Medley*, 972 P.2d 913, 917 (Utah 1998) ("[W]e hold that the Subpoena Powers Act can be used by the State only prior to the filing of formal criminal charges.").

sionary rule because the obtaining of evidence through invalid subpoenas constituted an unreasonable search and seizure. *See id.*

¶ 22 The Utah Supreme Court held "that under [A]rticle I, [S]ection 14 of the Utah Constitution, [the] defendants ... had a right to be secure against unreasonable searches and seizures of their bank [records] and all papers which [they] supplied to the bank ... upon the reasonable assumption that the information would remain confidential." *Id.* at 418 (fifth alteration in original). The court determined that the defendants had a legitimate expectation of privacy concerning the content of their bank records. *See id.* It then acknowledged that the subpoenas were illegal or invalid. *See id.* at 420. The supreme court determined that the search and seizure of the bank records by way of unlawful subpoenas was therefore unreasonable. *See id.* at 418–19.

¶ 23 Our supreme court then considered whether the evidence obtained through the unreasonable search and seizure should be suppressed. The court first noted that " '[e]xclusion of illegally obtained evidence is a necessary consequence of police violations of [A]rticle I, [S]ection 14 [of the Utah Constitution].' " *Id.* at 419 (quoting *State v. Larocco,* 794 P.2d 460, 472 (Utah 1990)). The supreme court accepted the defendants' analogy between a police officer's erroneous action in a warrantless search and an attorney's "unconstitutional application of the Subpoena Powers Act." *Id.* Based on the general rule and this analogy, the supreme court concluded that "[a]ll bank records obtained as a result of illegal subpoenas must ... be suppressed unless a good faith exception to the exclusionary rule is appropriate." *Id.* The good faith exception to the exclusionary rule did not apply because the error that rendered the subpoenas illegal was due to the attorney's conduct and the attorney's errors were not excused by any sort of reasonable reliance on the court's authorization. *See id.* at 419–20 ("We conclude that a good faith exception ... would be inapplicable to illegal subpoenas issued to defendants' banks by the attorney general, who is chargeable for the illegality.").

¶ 24 Here, like the defendants in *Thompson,* Defendant had a privacy interest in the potentially privileged medical records sought by the State. *See State v. Gonzales,* 2005 UT 72, ¶ 41, 125 P.3d 878 (quashing subpoenas because an attorney improperly subpoenaed a victim's "private mental health records in violation of her right to privacy"); *State v. Cramer,* 2002 UT 9, ¶ 22, 44 P.3d 690 (acknowledging a "privacy interest[ ] in privileged mental health records"); *State v. Anderson,* 972 P.2d 86, 89 (Utah Ct.App. 1998) (stating that the purpose of the physician-patient privilege is to encourage a patient's full disclosure to a physician "in order to receive effective medical treatment, free from the embarrassment and *invasion of privacy* that might result from the physician's disclosure of the information" (emphasis added)). As discussed above, Defendant's medical records were obtained through subpoenas that were illegal due to the State's failure to notify Defendant of their issuance. Thus, under Article I, Section 14 of the Utah Constitution, the evidence obtained through the State's illegal subpoenas to the Hospital must be suppressed unless an exception to the exclusionary rule applies.

¶ 25 Although not relied on by the State in arguing its position below, the trial court used the inevitable discovery exception to the exclusionary rule to justify the admission of Defendant's records. The court's conclusion that the inevitable discovery rule applied was based on its determination that "[t]he Prosecutor would have been able to obtain Defendant's medical records ... despite any claimed privilege ... *if* the Prosecutor had provided Defendant advance notice of the subpoena and otherwise complied with [r]ule 45." (Emphasis added.) The Utah Supreme Court has already rejected the logic underlying this conclusion, which is essentially, " '[i]f we hadn't done it wrong, we would have done it right.' " *State v. Topanotes,* 2003 UT 30, ¶ 19, 76 P.3d 1159 (alteration in original) (quoting *United States v. Thomas,* 955 F.2d 207, 210 (4th Cir.1992)). The supreme court concluded that the fact that action "could have" been taken properly does not, standing alone, justify the application of the inevitable discovery doctrine and that allowing the admission of such evidence "would

provide no deterrent at all to future unlawful" state action. *Id.*

¶ 26 Accordingly, the trial court erred by concluding that the inevitable discovery rule applied because the determination of applicability rested solely on the possibility of the State's compliance with notice requirements rather than on a showing that the State would have discovered the evidence through some other legal means. The State has not directed this court to any other exception to the exclusionary rule that would justify the admission of Defendant's medical records obtained through the invalid subpoenas.[3] As a result, we conclude that the trial court erred in denying Defendant's motion to suppress the evidence.

## CONCLUSION

¶ 27 The trial court correctly determined that the State's failure to give Defendant notice of the subpoenas issued to Defendant's medical provider violated his rights and constituted an unreasonable search and seizure. Even though the medical records the State sought may fall into an exception to the physician-patient privilege, Defendant had a right to be notified of the potential disclosure of his confidential information. In light of the fact that no exception to the exclusionary rule applies, the trial court erred in denying Defendant's motion to suppress the evidence obtained through the subpoenas.

¶ 28 We therefore reverse and remand.

¶ 29 WE CONCUR: JUDITH M. BILLINGS and GREGORY K. ORME, Judges.

---

**3.** The good faith exception to the exclusionary rule would not apply in this case because the trial court merely authorized the prosecutor to prepare a subpoena and subpoena duces tecum to obtain Defendant's medical records and blood samples relating to the accident. The court did not authorize the prosecutor to issue the subpoenas in secret or to otherwise issue them without notice to Defendant.